# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-04-00586-CV

**Mid-South Telecommunications Company, Appellant**

**v.**

**Norman K. Best and Philip W. Faris, Jr., Appellees**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 200TH JUDICIAL DISTRICT
## NO. GN401565, HONORABLE ROSE SPECTOR, JUDGE PRESIDING

## O P I N I O N

This case presents the issue of when a creditor's claim against a guarantor of a debt accrues. Norman K. Best and Philip W. Faris, Jr. were among the guarantors of a loan from Mid-South Telecommunications Company to VidiMedix Corporation. After VidiMedix defaulted on the loan when it came due on December 31, 1999, Mid-South demanded payment from the guarantors. Eventually, in May 2004, Mid-South sued Best and Faris, asserting a breach-of-contract claim for failure to perform under the Guaranty. Mid-South sought summary judgment on that claim. Best and Faris filed both a response and a cross-motion for summary judgment raising the four-year statute of limitations. *See* Tex. Civ. Prac. & Rem. Code Ann. § 16.004(a)(3) (West 2002). The district court denied Mid-South's motion and granted that of Best and Faris, finding that Mid-South's claims were barred. For the reasons stated below, we will affirm.

## BACKGROUND

The summary judgment record reflects the following. On January 27, 1999, VidiMedix executed a "Convertible Promissory Note" (the "Note") in favor of Mid-South for $250,000. The Note was made payable on or before December 31, 1999. Paragraph 3 of the Note, titled "Default," provided that VidiMedix "will be deemed in default under this Note if [it] fails to meet its payment obligations hereunder." On the same date, in consideration for the loan and Note, four guarantors, including Faris and Best,[1] executed a guaranty under which

> each of the undersigned guarantors . . . hereby severally, unconditionally and irrevocably guarantees the prompt and complete payment of all amounts [VidiMedix] owes to [Mid-South] under the Note, in strict accordance with its terms.

Each guarantor agreed to be liable for a specified pro-rata share of the unpaid debt and accrued interest. Best and Faris's shares were 8.1% and 2.36%, respectively. Further, each guarantor explicitly waived any right to require Mid-South to proceed first against VidiMedix, to exhaust any security held by VidiMedix, or to exercise any other remedy Mid-South might possess before seeking recovery from them.

Paragraph 6 of the Guarantee provided:

> One or more of the following shall constitute an Event of Default under the Guaranty[:] if Guarantor purports to revoke or otherwise avoid any obligation under this Guaranty; or if a Guarantor dies, becomes insolvent, commences or has commenced against him an action under the United States Bankruptcy Code, becomes subject to any criminal prosecution, suffers a judgment or judgments for the

---

[1] The record indicates that each guarantor was a principal of VidiMedix. Faris was the company's president and CEO.

2

payment of money individually or in the aggregate in excess of $100,000, or suffers any portion of his assets to be attached, seized or levied upon; or any circumstances arising causing [Mid-South] in good faith, to become insecure as to the satisfaction of any of Guarantors' obligations under this Guaranty.

It is undisputed that VidiMedix defaulted on the Note when it became due on December 31, 1999. On April 26, 2000, Michael Stephens, attorney for Mid-South, sent a letter to VidiMedix (through Faris, its President and CEO) demanding payment of all principal and accrued interest due on the Note. On the same day, Stephens also sent letters to both Faris and Best demanding payment of their respective pro-rata percentages of principal and accrued interest for which they were each liable under the Guaranty.[2] Subsequently, on June 15, 2000, Michael L. Patrick, Mid-South's Executive Vice-President, wrote Faris, as VidiMedix's president and CEO, "relative to our concerns in how you, on behalf of VidiMedix, have handled our Note." Patrick stated that Mid-South had granted a three-month extension of the note's due date to March 2000, that VidiMedix had still not performed, that Faris had subsequently indicated that VidiMedix was experiencing financial difficulties and would likely file for bankruptcy, and that Faris had advised that the guarantors could not honor the Guaranty. Patrick added that Faris had been furtive and misleading in his communications with Mid-South. Patrick suggested that if the guarantors would restructure the Guaranty, "likely Mid-South will consent to converting the Note into eMedSoft.com shares on the same basis as other Bridge Noteholders."

---

[2] The letter indicates that Stephens also enclosed a copy of the demand letter he had sent to VidiMedix.

3

The record reflects further negotiations between Mid-South and the guarantors over the ensuing four years. It is undisputed, however, that neither Faris nor Best ever performed their obligations under the Guaranty. Mid-South ultimately filed suit against Faris and Best on May 17, 2004, for breach of contract based on their failure to perform under the Guaranty. Faris and Best answered with a general denial and the affirmative defense that the four-year statute of limitations barred Mid-South's claims. *See* Tex. Civ. Prac. & Rem. Code Ann. § 16.004(a)(3) (suit on debt must be filed not later than four years after cause of action accrues).

Mid-South moved for summary judgment as to both liability and damages on its claims against Faris and Best. Faris and Best filed a cross-motion for summary judgment and a response to Mid-South's motion, relying on their limitations defense and their affidavits that neither ever made payments in accordance with the Guaranty. Best and Faris contended that, as a matter of law, Mid-South's breach-of-contract claims against them accrued on December 31, 1999, the date that VidiMedix defaulted on the Note. Mid-South countered that, under the terms of the Guaranty, its claims accrued only upon an "Event of Default" defined in paragraph 6 of the agreement and that Best and Faris failed to conclusively establish that such an event occurred earlier than four years before Mid-South filed suit. According to Mid-South, the earliest evidence in the summary judgment record of an Event of Default was its June 15, 2000 letter to Faris, which it characterized as a memorialization of "circumstances arising causing [Mid-South] in good faith, to become insecure as to the satisfaction of any of Guarantors' obligations under this Guaranty."[3]

---

[3] Alternatively, Mid-South suggested that limitations did not begin to run until it filed its petition on May 17, 2004.

The district court granted Best and Faris's cross-motion for summary judgment, finding that Mid-South's claims were barred, denied Mid-South's motion, and rendered a take-nothing judgment in favor of Best and Faris. This appeal followed.

## DISCUSSION

Mid-South presents a single issue on appeal: whether the district court erred in determining that Mid-South's breach-of-contract claim accrued more than four years before it filed suit so as to be barred by limitations. *See* Tex. Civ. Prac. & Rem. Code Ann. § 16.004(a)(3).

**Standard of review**

We review the district court's summary judgment *de novo*. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215 (Tex. 2003). When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Valence Operating Co.*, 164 S.W.3d at 661; *Knott*, 128 S.W.3d at 215; *Science Spectrum, Inc. v. Martinez*, 941 S.W.2d 910, 911 (Tex. 1997). Summary judgment is proper when there are no disputed issues of material fact and the movant is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Shell Oil Co. v. Khan*, 138 S.W.3d 288, 291 (Tex. 2004) (citing *Knott*, 128 S.W.3d at 215-16). When, as here, both parties move for summary judgment and the district court grants one motion and denies the other, we review the summary-judgment evidence presented by both sides, determine all questions presented, and render the judgment the district court should have rendered. *Texas Workers' Comp. Comm'n v. Patient Advocates of Tex.*, 136 S.W.3d 643, 648 (Tex. 2004); *FM Props. Operating Co. v. City of Austin*, 22 S.W.3d 868, 872 (Tex. 2000).

5

**Best and Faris' summary judgment motion**

We will consider first whether the district court erred in granting summary judgment for Best and Faris. Best and Faris sought summary judgment on the ground that "[t]he statute of limitations bars Mid-South's claims."[4] There is no dispute that this case is governed by the four-year statute of limitations for suits on debts, *see* Tex. Civ. Prac. & Rem. Code Ann. §16.004(a)(3), or that this provision required Mid-South to bring its breach-of-contract action no later than four years after the day its cause of action accrued. The parties' dispute centers on the date on which Mid-South's cause of action accrued. When a cause of action accrues is a question of law. *Moreno v. Sterling Drug*, 787 S.W.2d 348, 351 (Tex. 1990). A cause of action generally accrues at the time when facts come into existence that authorize a claimant to seek a judicial remedy. *Murray v. San Jacinto Agency, Inc.*, 800 S.W.2d 826, 828 (Tex. 1990).

Best and Faris argue that Mid-South's breach-of-contract claim accrued on December 31, 1999, when the Note matured and VidiMedix defaulted on its repayment obligation. Best and Faris do not purport to adopt the date at which Mid-South's claim under the Note against VidiMedix accrued, nor are they attempting to incorporate any limitations defense that VidiMedix might have asserted against such a claim. *See, e.g., Beddall v. Reader's Wholesale Distribs., Inc.*, 408 S.W.2d 237, 240 (Tex. Civ. App.—Austin 1966, no writ) (where guarantor can be sued independently from principal obligor, guarantor cannot invoke principal obligor's limitation's defense); *see also Willis v. Chowning*, 40 S.W. 395, 396-97 (1897) (in cases where surety could be sued without joining

---

[4] Best and Faris also asserted as a summary judgment ground that a contractual waiver of limitations within the Guaranty was void and unenforceable. Mid-South did not dispute this proposition in the district court, nor has it attempted to invoke the waiver on appeal.

principal, surety could not assert maker's limitations defense on note); *Western Casket Co. v. Estrada*, 116 S.W. 113, 113-14 (Tex. Civ. App.—El Paso 1909, no writ) (applying principles announced in *Willis* to guarantors). Instead, to determine when Mid-South's claim against them accrued, Best and Faris recognize that we must look to the source of their obligations to Mid-South—the terms of the guarantee. *See Vastine v. Bank of Dallas*, 808 S.W.2d 463, 464 (Tex. 1991); *Wiman v. Tomaszewicz*, 877 S.W.2d 1, 6 (Tex. App.—Dallas 1994, no writ).

We construe a guaranty as any other contract. The construction of a contract is a question of law for the court. *Buys v. Buys*, 924 S.W.2d 369, 372 (Tex. 1996). We examine the entire document and consider each part with every other part so that the effect and meaning of one part on any other part may be determined. *Heritage Res. v. Nationsbank*, 939 S.W.2d 118, 121 (Tex. 1996); *Steeger v. Beard Drilling Co.*, 371 S.W.2d 684, 688 (Tex. 1963). We interpret the contract by ascertaining the true objective intentions of the parties, based on the contract language. *SAS Inst., Inc. v. Breitenfeld*, 167 S.W.3d 840, 841 (Tex. 2005). We presume that the parties to a contract intend every clause to have some effect. *Heritage Res.*, 939 S.W.2d at 121; *Ogden v. Dickinson State Bank*, 662 S.W.2d 330, 331 (Tex. 1983). We give words their plain, common, or generally accepted meaning unless the instrument shows that the parties used them in a technical or different sense. *Heritage Res.*, 939 S.W.2d at 121.

Under the Guaranty, Best and Faris "unconditionally and irrevocably" guaranteed "the prompt and complete payment" of VidiMedix's obligations under the Note "in strict accordance with its terms." This type of language tends to denote an absolute guaranty, or one made contingent solely upon the default of the principal obligor. *See Universal Metals & Mach., Inc. v. Bohart*, 539 S.W.2d 874, 877-78 (Tex. 1976). Under an absolute guaranty, a guarantor is primarily liable on the

7

underlying obligation; thus, "[t]he terms of the note must be examined to ascertain the guarantor's obligations under his unconditional guarantee, for by that guaranty he agrees to pay the instrument according to its terms if it is not paid when due." *Hopkins v. First Nat'l Bank at Brownsville*, 551 S.W.2d 343, 345 (Tex. 1977); *see Reece v. First State Bank of Denton*, 566 S.W.2d 296, 297 (Tex. 1978).

Each guarantor also explicitly waived "all presentments, demands for performance, notices of performance, protest, notices of protest, notices of dishonor, and notices of acceptance of the Guaranty and its existence, creation, or incurring of new or additional indebtedness" and any right to require Mid-South to proceed against VidiMedix, to exhaust any security interest held by VidiMedix, or to seek any other remedy. *See, e.g.*, *Ocean Transp., Inc. v. Greycas, Inc.*, 878 S.W.2d 256, 267-68 (Tex. App.—Corpus Christi 1994, writ denied). Thus, demand was not an integral part of the cause of action or a condition precedent to Mid-South's right to enforce the Guaranty. *See id*.

Paragraph 6 defines an "Event of Default" under the Guaranty: if a guarantor "purports to revoke or otherwise avoid any obligation under this Guaranty," dies, becomes insolvent, commences bankruptcy or has bankruptcy commenced against him, is criminally prosecuted, incurs a money judgment greater than $100,000, has assets attached, seized, or levied upon; or "any circumstances aris[e] causing [Mid-South] in good faith, to become insecure as to the satisfaction of any of Guarantors' obligations under this Guaranty." Construing paragraph 6 in the context of the Guaranty as a whole, *see Columbia Gas Transmission Corp.*, 940 S.W.2d at 589, we find that it operates to identify acts and omissions that constitute a failure to perform under the Guaranty, but it does not limit the central promise that Best and Faris made concerning "the prompt and complete payment of all amounts that Borrower owes [Mid-South] under the Note, in strict accordance of its

8

terms." In other words, Best and Faris made themselves bound, when guaranteeing the loan, to the payment obligations of the Note. Paragraph 6, then, adds events that could constitute an event of default on the part of a guarantor that do not arise from the terms of the Note itself. In the end, the guarantors had a payment obligation immediately upon VidiMedix's default and, from that point forward, were in breach of that obligation as long as they failed to perform. *Cf. Ocean Transp.*, 878 S.W.2d at 268.

All parties agree that VidiMedix defaulted on the Note on December 31, 1999. Best and Faris became obligated to make payment under the terms of their guaranty agreements on that date. Thus, Mid-South's claim against Best and Faris accrued on December 31, 1999. Other than its reliance on paragraph 6, Mid-South did not present any grounds for finding a later accrual date. Accordingly, the district court did not err in granting summary judgment for Best and Faris and denying Mid-South's motion.

## CONCLUSION

We affirm the district court's grant of summary judgment in favor of Best and Faris.

_____

Bob Pemberton, Justice

Before Justices B. A. Smith, Puryear and Pemberton

Affirmed

Filed: January 27, 2006

9