COURT OF APPEALS

                                                 SECOND
DISTRICT OF TEXAS

                                                                FORT
WORTH

 

 

                                        NO.
2-08-347-CV

 

 

DONG JAE SHIN AND KING=S                                              APPELLANTS



TIRE
AND AUTO DFW, INC.                                            AND
APPELLEES

 

                                                   V.

 

SOLIAMAN
SHARIF                                                                APPELLEE

                                                                                 AND
APPELLANT

 

                                              ------------

 

           FROM THE 352ND
DISTRICT COURT OF TARRANT COUNTY

 

                                              ------------

 

                                MEMORANDUM OPINION[1]

 

                                              ------------

I.  INTRODUCTION








Appellants and Cross-Appellees Dong Jae Shin (AShin@) and
King=s Tire
and Auto DFW, Inc. (ADFW@) appeal
the trial court=s grant of two summary judgments
in favor of Appellee and Cross-Appellant Soliaman Sharif.  In his appeal, Sharif appeals the trial court=s
overruling of his objections to Appellants= summary
judgment responses and evidence.  We will
affirm.

II.  BACKGROUND

Sharif owned King=s Tire
and Auto, Inc. (AKing=s Tire@), a
Texas corporation engaged in the wholesale and retail sale of tires, wheels,
and auto accessories.  In September 2006,
Sharif sold King=s Tire to DFW for $2.9 million.[2]  As part of the purchase, Shin paid Sharif $1
million at the closing, and DFW executed two promissory notes dated October 2,
2006, in favor of Sharif:  one in the
amount of $200,000 and the other in the amount of $1.7 million.  Shin executed a AGuaranty@ for the
$200,000 promissory note and a AGuaranty@ for the
$1.7 million promissory note.  DFW also
entered into a ALease with Purchase Option@
agreement with Sharif in which DFW leased the business property from Sharif for
$3,700 per month.








Sharif subsequently sued Appellants for, among
other things, breach of contract.  Sharif
alleged that DFW failed to make any payments under either promissory note, that
Shin Afailed
and refused to make[] any payments or otherwise guarantee the obligations
described in the Guaranty Agreement, despite demands from@ Sharif,
and that Shin was in breach of the guarantee agreements.  Appellants answered and asserted
counterclaims against Sharif for fraudulent inducement, common law fraud,
violations of the Texas Deceptive Trade Practices Act, breach of contract,
conversion, and unjust enrichment. 
Appellants sought economic, actual, multiple, and exemplary damages and
also sought damages for mental anguish.

Sharif filed a motion for partial summary
judgment, arguing that he has a security interest as a matter of law in the
inventory, assets, and equipment pursuant to the lease agreement and the
promissory notes.  Sharif later filed a
second motion for partial summary judgment on his claims for breach of the
guaranty agreements; he asked the trial court to enter an order that Shin be
held personally liable for breach of both guaranty agreements and that he
recover damages from Shin in the amounts of $200,000 and $1.7 million.  Sharif also filed a no-evidence motion for
summary judgment on Appellants=
counterclaims and damages.

Sharif filed objections to Appellants=
responses to the second motion for partial summary judgment and the no-evidence
motion for summary judgment.  The trial
court signed an amended final judgment granting all three of Sharif=s
motions for summary judgment, and it ordered that Sharif recover from Shin
damages in the total amount of $1.9 million. 
These appeals followed.








III.  STANDARDS
OF REVIEW

Under a traditional motion for summary judgment,
the issue on appeal is whether the movant met the summary judgment burden by
establishing that no genuine issue of material fact exists and that the movant
is entitled to judgment as a matter of law. 
Tex. R. Civ. P. 166a(c);  Sw.
Elec. Power Co. v. Grant, 73 S.W.3d 211, 215 (Tex. 2002); City of
Houston v. Clear Creek Basin Auth., 589 S.W.2d 671, 678 (Tex. 1979).  The burden of proof is on the movant, and all
doubts about the existence of a genuine issue of material fact are resolved
against the movant.  Sw. Elec. Power
Co., 73 S.W.3d at 215.  Once the
defendant produces sufficient evidence to establish the right to summary
judgment, the burden shifts to the plaintiff to come forward with competent
controverting evidence raising a genuine issue of material fact with regard to
the element challenged by the defendant. 
Centeq Realty, Inc. v. Siegler, 899 S.W.2d 195, 197 (Tex.
1995).  The summary judgment will be
affirmed only if the record establishes that the movant has conclusively proved
all essential elements of the movant=s cause
of action or defense as a matter of law. 
Clear Creek Basin, 589 S.W.2d at 678.








Under a no-evidence motion for summary judgment,
the party without the burden of proof may, without presenting evidence, move
for summary judgment on the ground that there is no evidence to support an
essential element of the nonmovant=s claim
or defense.  Tex. R. Civ. P.
166a(i).  The motion must specifically
state the elements for which there is no evidence.  Id.; Johnson v. Brewer &
Pritchard, P.C., 73 S.W.3d 193, 207 (Tex. 2002).  The trial court must grant the motion unless
the nonmovant produces summary judgment evidence that raises a genuine issue of
material fact.  See Tex. R. Civ.
P. 166a(i) & cmt.; Sw. Elec. Power Co., 73 S.W.3d at 215.

When reviewing a no-evidence summary judgment, we
examine the entire record in the light most favorable to the nonmovant,
indulging every reasonable inference and resolving any doubts against the
motion.  Sudan v. Sudan, 199
S.W.3d 291, 292 (Tex. 2006).  If the
nonmovant brings forward more than a scintilla of probative evidence that
raises a genuine issue of material fact, then a no-evidence summary judgment is
not proper.  Moore v. K Mart Corp.,
981 S.W.2d 266, 269 (Tex. App.CSan
Antonio 1998, pet. denied).  We review a
no‑evidence summary judgment for evidence that would enable reasonable
and fair‑minded jurors to differ in their conclusions.  Hamilton v. Wilson, 249 S.W.3d 425,
426 (Tex. 2008) (citing City of Keller v. Wilson, 168 S.W.3d 802, 822
(Tex. 2005)).








IV.  GUARANTY AGREEMENTS

In Appellants= second
issue, Shin argues that the trial court erred by granting Sharif=s second
motion for partial summary judgment on Sharif=s claims
for breach of the guaranty agreements.








A guaranty agreement is a person=s
promise to perform the same act that another person is contractually bound to
perform.  Simmons v. Compania
Financiera Libano, S.A., 830 S.W.2d 789, 792 (Tex. App.CHouston
[1st Dist.] 1992, writ denied).  A
guaranty creates a secondary obligation under which the guarantor promises to
answer for the debt of the primary obligor if the primary obligor fails to
perform.  Garner v. Corpus Christi Nat=l Bank, 944
S.W.2d 469, 475 (Tex. App.CCorpus
Christi 1997, writ denied).  To recover
under a guaranty agreement, a plaintiff must show (1) the existence and
ownership of the guaranty agreement, (2) the terms of the underlying
contract by the holder, (3) the occurrence of the conditions upon which liability
is based, and (4) the failure or the refusal to perform the promise by the
guarantor.  Byrd v. Estate of Nelms,
154 S.W.3d 149, 157 (Tex. App.CWaco
2004, pet. denied); Roye Enter., Inc. v. Roper, No. 02-04-00132-CV, 2005
WL 1791964, at *3 (Tex. App.CFort
Worth July 28, 2005, no pet.) (mem. op.); see also Simpson v. MBank Dallas,
N.A., 724 S.W.2d 102, 107 (Tex. App.CDallas
1987, writ ref=d n.r.e.) (stating that when a
guaranty is in writing and signed by the guarantor, the guaranty=s
existence presumes consideration).

Here, both guaranty agreements are in writing,
both are signed by Shin, and both are dated October 2, 2006Cthe same
date that DFW executed the promissory notes. 
Both guaranty agreements identify Shin as the AGuarantor,@ DFW as
the ABorrower,@ and
Sharif as the ALender.@  The AGuaranteed
Indebtedness@ for the $200,000 promissory
note is A[t]he
debt evidenced by the note dated October 2, 2006, in the original principal
amount of $200,000.00, executed by [DFW] and payable to the order of [Sharif].@  The AGuaranteed
Indebtedness@ for the $1.7 million promissory
note is A[t]he
debt evidenced by the note dated October 2, 2006, in the original principal
amount of $1,700,000.00, executed by [DFW] and payable to the order of
[Sharif].@ 
Both guaranty agreements state, AGuarantor
agrees to pay, when due or declared due, the Guaranteed Indebtedness to Lender.@  Both guaranty agreements state, AThis
guaranty is an absolute, irrevocable, unconditional, and continuing guaranty of
payment and performance and not of collection.@  And both guaranty agreements state, A[Sharif]
need not resort to [DFW] or any other person or proceed against collateral
before pursuing [his] rights against [Shin] or any other guarantor.@








Sharif stated in his affidavit attached to his
second motion for partial summary judgment that he has performed his
obligations under the promissory notes and guaranty agreements, that he has not
received a single payment under either promissory note or under either guaranty
agreement, and that he has suffered damages in the amount of $200,000 under the
first promissory note and of $1.7 million under the second promissory note.

We hold that Sharif produced sufficient evidence
to establish his right to summary judgment on his claim that Shin breached the
guaranty agreements.  The burden shifted
to Shin to come forward with competent controverting evidence raising a genuine
issue of material fact.  See Centeq
Realty, Inc., 899 S.W.2d at 197.

Shin argues that he raised a genuine issue of
material fact on Sharif=s breach of contract claims
because Sharif waived his right to payment under the guaranty agreements and
because Sharif is estopped from collecting under the guaranty agreements.  To support these contentions, Shin directs us
to his affidavit in which he states that he and Sharif orally altered the
written guaranty agreements.  The
affidavit states in relevant part as follows:








When the business was not
generating much income at all during [the] months of October, November,
December 2006, [Sharif] was aware of the situation that I could not pay the
rent or payments under the promissory notes. 
In fact, when the due date for the first monthly payment of about
$25,000 under 1.7 million dollar came, [Sharif] asked me not to pay monthly
rent or promissory notes for the time being and until business got better.  I was assured that I did not [have to] pay
rent payments or the payments under that 1.7 million dollars note since
[Sharif] admittedly owed me at least $300,000.00 from the date of the closing,
and continued to owe me because of transfer of inventories from DFW to Empire
Tire. . . .  

 

. . .  I was assured again by
[Sharif] that I did not have to pay the monthly payment under the note and
under my personal guarantee because the business was not making enough
money to pay monthly payments of the note. . . .  

 

. . .
.  

 

. . .  It was mutually
underst[ood] that [Sharif] would waive payments due under the two promissory
notes because the business was not generating enough income to pay for the
payments and serious negotiation between [Sharif] and me was going on.  [Emphasis added.]

 

Regarding the $200,000 promissory note, Shin directs us to deposition
testimony in which Sharif testified that he Awould
cover@ the
note because he owed Shin $200,000 worth of inventory.[3]

Shin also argues that he raised a genuine issue
of material fact on Sharif=s breach
of contract claims because there is evidence that Shin is entitled to a Aset-off
against the payments due to Sharif under the guaranty agreement on the $200,000
Note.@  None of Shin=s
arguments are compelling.













We construe a guaranty as any other contract.[4]  Mid-South Telecomm. Co. v. Best, 184
S.W.3d 386, 390 (Tex. App.CAustin
2006, no pet.).  Parties to a written
contract within the statute of frauds may not by oral agreement alter the terms
of the contract and make a new contract resting partly in writing and partly in
parol.  Michael v. Busby, 139 Tex.
278, 282B83, 162
S.W.2d 662, 664 (1942); see also David J. Sacks, P.C. v. Haden, 266
S.W.3d 447, 450 (Tex. 2008) (stating that an unambiguous contract will be
enforced as written, and parol evidence will not be received for the purpose of
creating an ambiguity or to give the contract a meaning different from that
which its language imparts); Standard Constructors, Inc. v. Chevron Chem.
Co., 101 S.W.3d 619, 624 (Tex. App.CHouston
[1st Dist.] 2003, pet. denied) (stating that extrinsic evidence is not
admissible to contradict or vary the meaning of unambiguous language in a
written contract).

Shin does not argue that the promissory notes or
guaranty agreements are ambiguous.  Thus,
under well-established rules of contract construction, we are required to
construe the promissory notes and guaranty agreements as written.  The evidence of the alleged oral alterations
of the terms of the promissory notes and guaranty agreements may not be used to
raise a fact issue on Sharif=s breach
of contract claims because the evidence is extrinsic and contradicts or varies
Shin=s and
Sharif=s true
intentions as expressed in the plain language of the written instruments.  See Michael, 162 S.W.2d at 664; see
also Haden, 266 S.W.3d at 450; Standard Constructors, Inc., 101
S.W.3d at 624.  Shin and Sharif also
specifically contemplated and addressed in the guaranty agreements how such
evidence relied upon by Shin is to be addressed.  The guaranty agreements state the following:

11.   FINAL
AGREEMENT:  THIS WRITTEN AGREEMENT
REPRESENTS THE FINAL AGREEMENT BETWEEN THE PARTIES AND MAY NOT BE CONTRADICTED
BY EVIDENCE OF PRIOR, CONTEMPORANEOUS, OR SUBSEQUENT ORAL AGREEMENTS OF THE
PARTIES.  THERE ARE NO UNWRITTEN ORAL
AGREEMENTS BETWEEN THE PARTIES.








Thus, the guaranty agreements themselves expressly provide that they
may not be contradicted by the alleged subsequent oral alterations or
agreements relied upon by Shin to raise a genuine fact issue.  

We hold that Shin failed to produce competent,
controverting evidence raising a genuine issue of material fact as to Sharif=s breach
of contract claims and that the trial court did not err by granting Sharif
summary judgment on those claims.  See
Tex. R. Civ. P. 166a(c); Sw. Elec. Power Co., 73 S.W.3d at 215.  We overrule Appellants= second
issue.

V.  SHIN=S COUNTERCLAIMS

In Appellants= first
issue, DFW argues that the trial court erred by granting Sharif=s
no-evidence motion for summary judgment on DFW=s fraud,
fraud in the inducement, breach of contract, conversion, and unjust enrichment
counterclaims.

A.     Fraud
and Fraud in the Inducement








The elements of common law fraud are that
(1) a material representation was made; (2) the representation was
false; (3) when the representation was made, the speaker knew it was false
or made it recklessly without any knowledge of the truth and as a positive
assertion; (4) the representation was made with the intention that it be
acted upon by the other party; (5) the party acted in reliance upon the representation;
and (6) the party suffered injury.  Johnson
& Higgins of Tex., Inc. v. Kenneco Energy, Inc., 962 S.W.2d 507, 524
(Tex. 1998).  Fraudulent inducement Ais a
particular species of fraud that arises only in the context of a contract and
requires the existence of a contract as part of its proof.  That is, with a fraudulent inducement claim,
the elements of fraud must be established as they relate to an agreement
between the parties.@ 
Hasse v. Glazner, 62 S.W.3d 795, 798B99 (Tex.
2001); see also Walker v. TRB Bancorp, Inc., No. 05-07-00901-CV, 2008 WL
2738013, at *4 (Tex. App.CDallas July 15, 2008, pet.
denied) (mem. op.) (stating that a fraudulent inducement claim has the same
elements as a fraud claim, plus the added element that the fraud related to an
agreement between the parties).








DFW argues that Sharif failed to include accounts
payable in the representations regarding King=s Tire=s past
profitability, that there were inventory amount misrepresentations, and that
invoices show that Sharif ordered goods from DFW=s
wholesale vendors using DFW=s credit
line even though Sharif said he would purchase goods from DFW.  DFW directs us to numerous documents
purportedly evidencing representations made by Sharif relating to King=s Tire=s sales
revenue history, sales summary, inventory summaries, profit-and-loss
statements, and monthly purchases by vendors. 
DFW also points to an October 12, 2007 invoice listing King=s Tire
as the purchaser of numerous items from ABZO
Custom Wheels@ and to portions of Shin=s
affidavit, including part in which Shin states that Sharif made certain
representations about the profitability of the business.

Assuming without deciding that DFW=s
summary judgment evidence is admissible, none of it raises a genuine issue of
material fact that Sharif made a material, false representation that was known
to be false or that was made recklessly and without any knowledge of the
truth.  See Johnson & Higgins of
Tex., Inc., 962 S.W.2d at 524.  Shin=s
affidavit contains several conclusory, self-serving statements that do not
constitute summary judgment evidence, including that Sharif Amanipulated@ his
profit numbers because Athe profit margin changed when
[Shin] took over,@ that Sharif Adeceptively
hid[]@
accounts payable to show a profit in 2005 and part of 2006, and that Sharif Afraudulently
induced [Shin] to purchase@ the
business.  The remainder of Shin=s
summary judgment evidence consists almost entirely of numerical data, which
does not demonstrate any fraud by Sharif. 
Because DFW failed to raise a genuine issue of material fact on one or
more challenged fraud and fraudulent inducement elements, we hold that the
trial court did not err by granting summary judgment in favor of Sharif on
Appellants= fraud and fraudulent inducement
counterclaims.  See Tex. R. Civ.
P. 166a(i).  We overrule this part of
Appellants= first issue.








B.     Breach of Contract

The elements of a breach of contract are that
(1) the plaintiff and defendant had a valid, enforceable contract;
(2) the plaintiff performed or tendered performance of the contractual
obligations; (3) the defendant breached the contract; and (4) the
defendant=s breach caused the plaintiff=s
injuries.  West v. Brenntag Sw., Inc.,
168 S.W.3d 327, 337 (Tex. App.CTexarkana
2005, pet. denied). 

DFW argues that Sharif failed to move for summary
judgment on its counterclaim that Sharif wrongfully terminated the lease.  In its ACounterclaims
and Application for Injunctive Relief@
pleading, DFW identified its claim that Sharif wrongfully terminated the lease
agreement as a ABreach of contract@
claim.  In Sharif=s no-evidence
motion for summary judgment, he specifically challenged each element of DFW=s ABreach
of Contract@ claim.  We hold that Sharif moved for summary
judgment on DFW=s counterclaim that Sharif
wrongfully terminated the lease.  See Tex.
R. Civ. P. 166a(i) (requiring motion to specifically state the elements for
which there is no evidence).








DFW argues that it raised a genuine issue of
material fact on its counterclaim that Sharif wrongfully terminated the
lease.  The only evidence that DFW
contends supports its counterclaim that Sharif wrongful terminated the lease is
Sharif=s
alleged statements to Shin that Shin could begin to make lease payments when
the business became busier.  The written ALease
with Purchase Option@ agreement, however, reveals
that DFW agreed to lease the premises from October 2, 2006, through September
30, 2016, and that DFW agreed to pay a base monthly rent of $3,700.  Just as Shin=s
evidence of the alleged oral alterations to the terms of the promissory notes
and guaranty agreements could not be used to raise a fact issue on Sharif=s breach
of contract claims, the same type of evidence (subsequent oral alterations or
agreements) may not be used to raise a fact issue on DFW=s
wrongful termination of the lease claim. 
See Michael, 162 S.W.2d at 664; see also Haden, 266 S.W.3d
at 450; Standard Constructors, Inc., 101 S.W.3d at 624.








DFW further argues that it raised a genuine issue
of material fact on the counterclaim that Sharif breached a ATerritorial
Exclusivity Agreement.@[5]  Excluding Shin=s
affidavit, there is nothing in the promissory notes, the guaranty agreements,
the ALease
with Purchase Option@ agreement, the ASettlement
Statement,@[6] or any
other document in the record relating to DFW=s
transaction with Sharif that references or refers to a territorial exclusivity
agreement.  Thus, to the extent such an
agreement existed between Sharif and his vendors when Sharif owned and operated
King=s Tire,
there is no evidence that the agreement was part of the bargained-for exchange
between DFW and Sharif for the purchase of Sharif=s
business.  Moreover, there is no evidence
demonstrating that Sharif and DFW had a separate, valid, enforceable agreement
regarding a territorial exclusivity agreement. 
See West, 168 S.W.3d at 337 (stating that a valid, enforceable
contract must contain an exchange of obligations of value to each contracting
party, reciprocally or mutually induced).

We hold that DFW failed to raise a genuine issue
of material fact on one or more challenged breach of contract elements and that
the trial court did not err by granting summary judgment in favor of Sharif on
Appellants= breach of contract
counterclaims.  See Tex. R. Civ.
P. 166a(i).  We overrule this part of
Appellants= first issue.

C.     Conversion








To establish conversion of personal property, a
plaintiff must prove that (1) the plaintiff owned or had legal possession
of the property or entitlement to possession; (2) the defendant unlawfully
and without authorization assumed and exercised dominion and control over the
property to the exclusion of, or inconsistent with, the plaintiff=s rights
as an owner; (3) the plaintiff demanded return of the property; and
(4) the defendant refused to return the property.[7]  Augillard v. Madura, 257 S.W.3d 494,
500 (Tex. App.CAustin 2008, no pet.).

DFW argues that it raised a genuine issue of
material fact on its conversion counterclaim because Shin stated in his
affidavit that Mr. Rizik, Sharif=s
brother, Atook three checks ($1542, $3745,
$2051) in the aggregate amount[] of $7338 . . . payable to [DFW]@ and
deposited them in Sharif=s business account.  This evidence does not demonstrate that
Sharif unlawfully exercised dominion and control over the checks; it
demonstrates that Rizik, a DFW employee, exercised dominion and control over
the checks.[8]  If anything, this might be evidence of a possible
embezzlement by Rizik, not a conversion by Sharif.  We hold that DFW failed to raise a genuine
issue of material fact on one or more challenged conversion elements and that
the trial court did not err by granting summary judgment in favor of Sharif on
Appellants= conversion counterclaim.  See Tex. R. Civ. P. 166a(i).  We overrule this part of Appellants= first
issue.








D.     Unjust Enrichment

Unjust enrichment is an equitable principle
holding that one who receives benefits unjustly should make restitution for
those benefits.  Villarreal v. Grant
Geophysical, Inc., 136 S.W.3d 265, 270 (Tex. App.CSan
Antonio 2004, pet. denied).  Unjust
enrichment occurs when the person sought to be charged has wrongfully secured a
benefit or has passively received one which it would be unconscionable to
retain.  Id.  A party may recover under the theory of
unjust enrichment when one person has obtained a benefit from another by fraud,
duress, or the taking of an undue advantage. 
Heldenfels Bros. v. City of Corpus Christi, 832 S.W.2d 39, 41
(Tex. 1992); see also Zapata Corp. v. Zapata Gulf Marine Corp., 986
S.W.2d 785, 788 (Tex. App.CHouston
[1st Dist.] 1999, no pet.) (AUnjust
enrichment is not . . . a proper remedy merely because it >might
appear expedient or generally fair that some recompense be afforded for an
unfortunate loss= to the claimant, or because the
benefits to the person sought to be charged amount to a windfall.@).








Here, DFW argues that Sharif was unjustly
enriched because he Atransferr[ed] DFW=s
inventory to himself for his Empire Tire business, puchas[ed] inventory from
DFW=s
wholesalers for himself, and . . . deposit[ed] checks belonging to DFW into his
own account.@ 
To the extent DFW relies on evidence that Sharif allegedly breached a Aterritorial
exclusivity agreement,@ we have already held above that
there is no evidence demonstrating that Sharif and DFW had a separate, valid,
enforceable agreement regarding a territorial exclusivity agreement.  To the extent DFW relies on evidence that
checks payable to DFW were converted, we have already reasoned above that such
evidence does not demonstrate that Sharif exercised dominion and control over
the checks.  There is no evidence that
Sharif accomplished any of the complained-of activities by fraud, duress, or
the taking of an undue advantage, nor is there any evidence that Sharif
received the alleged benefits unjustly. 
As Sharif points out, there is nothing in the record that prohibited
Sharif from competing with DFW.  We hold
that DFW failed to raise a genuine issue of material fact on its challenged
unjust enrichment counterclaim and that the trial court did not err by granting
summary judgment in favor of Sharif on Appellants= unjust
enrichment counterclaim.  See Tex.
R. Civ. P. 166a(i).  We overrule the
remainder of Appellants= first issue.

VI.  ShARIF=S APPEAL

Sharif argues in three issues that the trial
court erred by overruling his objections to Appellants= summary
judgment responses and evidence. 
Appellants respond that Sharif waived the objections or that the
objections are without merit.  Having
overruled Appellants= two issues, however, Sharif=s issues
are moot.  We overrule Sharif=s
issues.








VII.  CONCLUSION

Having
overruled Appellants= two issues and Sharif=s issues, we affirm the
trial court=s judgment granting
Sharif=s motions for summary
judgment.

 

 

 

 

BILL
MEIER

JUSTICE

 

PANEL:  CAYCE, C.J.; MCCOY and MEIER, JJ.

 

DELIVERED:  June 4, 2009











[1]See Tex. R. App. P. 47.4.





[2]According to Sharif, Shin
is the President of DFW, an entity that he formed.





[3]Appellants= exhibit containing
deposition excerpts does not have a title page, does not identify the deponent
or parties, and does not have a reporter=s certificate.





[4]Our primary concern when
construing a written contract is to ascertain the true intentions of the
parties as expressed in the instrument.  Coker
v. Coker, 650 S.W.2d 391, 393 (Tex. 1983); Heil Co. v. Polar Corp.,
191 S.W.3d 805, 810 (Tex. App.CFort Worth 2006, pet. denied).  This is achieved by examining and considering
the entire writing in an effort to harmonize and give effect to all provisions
of the contract so that none will be rendered meaningless.  Coker, 650 S.W.2d at 393.  We presume that the parties to the contract
intend every clause to have some effect. 
Heritage Res., Inc. v. NationsBank, 939 S.W.2d 118, 121 (Tex.
1996); XCO Prod. Co. v. Jamison, 194 S.W.3d 622, 627 (Tex. App.CHouston [14th Dist.]
2006, pet. denied).  We give terms their
plain, ordinary, and generally accepted meaning unless the contract shows that
the parties used them in a technical or different sense.  Heritage Res., 939 S.W.2d at 121.





[5]Shin stated in his
affidavit that King=s Tire had a Aterritorial exclusive
contract with nationwide wheel suppliers.@





[6]This document contains
summaries of DFW=s transaction and King=s Tire=s transaction as they
relate to the sale of Sharif=s business.





[7]Some case law provides
that the demand and refusal elements are not required if other evidence
establishes an act of conversion.  See,
e.g., Burns v. Rochon, 190 S.W.3d 263, 270 n.2 (Tex. App.CHouston [1st Dist.] 2006,
no pet.).





[8]Shin states in his
affidavit that after he purchased Sharif=s business, he Alet Rizik . . . run the
business as a store manager as he had been doing all along.@