# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-07-00072-CV

**Todd M. Hertzberg, Appellant**

**v.**

**The Austin Diagnostic Clinic Association, P.A. d/b/a The Austin Diagnostic Clinic, Appellee**

### FROM COUNTY COURT AT LAW NO. 1 OF TRAVIS COUNTY
### NO. 01-CV-05-002021, HONORABLE J. DAVID PHILLIPS, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

Appellant, Todd M. Hertzberg, appeals from a summary judgment in favor of appellee, The Austin Diagnostic Clinic Association, P.A. d/b/a The Austin Diagnostic Clinic ("ADC"), in a breach-of-contract suit. Hertzberg raises two issues on appeal, asserting that: (1) the trial court erred in granting summary judgment based on limitations where ADC failed to conclusively establish that the statute of limitations began running before November 25, 2001; and (2) the trial court erred in granting ADC's requests for attorney's fees and post-judgment interest. We affirm the trial court's judgment.

## BACKGROUND

In February 1999, Hertzberg entered into an employment contract with ADC in which he agreed to work for ADC as a physician radiologist from October 1, 1999 to September 30, 2001.

The contract provided that both parties could terminate the agreement at any time upon three-months' prior notice. Specifically with regard to ADC's termination of the agreement, the contract stated:

> This Agreement may be terminated by [ADC], for any reason, upon three (3) months notice in advance. During the notice period, Doctor's duties shall continue and Doctor shall receive compensation as usual until the end of said notice period, provided Doctor performs all of Doctor's usual duties.

The contract further provided that "[i]n the event of termination of this agreement by either party, Doctor hereby agrees to purchase a tail policy prior to such termination date."[1] In addition, the contract included a provision regarding Hertzberg's possible advancement to an associate physician position, stating:

> [ADC] will notify physician ninety (90) days prior to end of employment agreement as to [ADC's] intent to advance or not advance physician to Associate status. Should [ADC] not advance physician to Associate status and elect not to extend physician employment agreement, [ADC] agrees to bear the expense of tail policy for professional liability to cover the period of employment physician [sic] while working at [ADC], and [ADC] agrees to waive physician's obligation to reimburse [ADC] for the expense of moving originally incurred to relocate physician to Austin at the commencement of this employment agreement.

---

[1] A "tail policy" is an insurance policy covering a professional once the professional's "claims-made" insurance policy is discontinued. Tail insurance essentially extends the period of the claims-made policy to allow additional time to make claims for acts occurring during the time the claims-made policy was in effect. *See Woods v. Mercer, Inc.*, 769 S.W.2d 515, 516 (Tex. 1988).

During his term of employment, Hertzberg did not become board-certified in radiology. According to ADC policy, physicians were prohibited from being promoted to associate positions unless they first became board-certified in their respective specialties. Thus, rather than promoting Hertzberg, ADC offered in early September 2001 to extend his employment for one year and increase his salary. Hertzberg rejected the offer. In a memorandum dated September 11, 2001, ADC notified Hertzberg that because ADC could not offer him an associate position and because he had rejected ADC's offer to extend his contract, his last day of employment at ADC would coincide with the last day of his contract term, which was September 30, 2001. The memo also stated that ADC expected Hertzberg to pay for his tail-insurance policy and reimburse ADC for his moving expenses. On September 14, 2001, Hertzberg's attorney responded in a letter to ADC asserting that Hertzberg would not pay for his tail-insurance coverage or reimburse ADC for his moving expenses because ADC did not provide him with the required ninety days' notice that he would not be promoted to an associate position and that ADC would not continue the employment relationship.

Hertzberg ultimately worked until September 17, 2001, and was paid through the month of September due to leave he had accumulated during his employment. On November 21, 2005, he filed suit for breach of contract, alleging that ADC breached the employment agreement by failing to: (1) provide him with ninety days' written notice that he would not be advanced to an associate position and that ADC would not extend the employment agreement; (2) provide him with a minimum of three months' written notice of its intent to terminate the agreement; and (3) pay for his tail-insurance policy and waive reimbursement of his moving expenses.

3

On August 17, 2006, ADC filed a motion for summary judgment, contending that Hertzberg's suit was barred by the four-year statute of limitations applicable to breach-of-contract claims. The trial court set a hearing for the motion on October 9, 2006. On September 29, 2006, Hertzberg filed a cross-motion for summary judgment, asserting that he filed his suit within the limitations period and that he was entitled to judgment as a matter of law on his claims. On October 5, 2006, ADC filed an objection to Hertzberg's cross-motion, arguing that the trial court should not consider the motion at the hearing because Hertzberg did not timely file the motion. The trial court did not rule on ADC's objection. At the hearing, the trial court considered and granted ADC's motion and reserved the issue of attorney's fees for another hearing. A month later, the trial court held a hearing in which it granted ADC's request for attorney's fees. The trial court then granted a final judgment in favor of ADC on November 7, 2006. ADC later filed a motion to modify the judgment to include post-judgment interest, and the trial court granted the motion and issued a modified final judgment including post-judgment interest on November 21, 2006. This appeal followed.

## STANDARD OF REVIEW

We review the trial court's summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). Summary judgment is proper when there are no disputed issues of material fact, and the movant is entitled to judgment as a matter of law. Tex. R. Civ. P. 166a(c); *Provident Life & Accident Ins. Co. v. Knott*, 128 S.W.3d 211, 215-16 (Tex. 2003). A defendant moving for summary judgment on the affirmative defense of limitations has the burden of conclusively establishing that defense. *Diversicare Gen. Partner, Inc. v. Rubio*, 185 S.W.3d

4

842, 846 (Tex. 2005). If the movant establishes that limitations bars the action, the non-movant must then adduce summary-judgment proof raising a fact issue in avoidance of limitations. *Id*. When reviewing a summary judgment, we take as true all evidence favorable to the nonmovant, and we indulge every reasonable inference and resolve any doubts in the nonmovant's favor. *Valence Operating Co.*, 164 S.W.3d at 661.

## DISCUSSION

Hertzberg raises two issues on appeal, contending that the trial court erred in: (1) granting summary judgment based on limitations where ADC failed to conclusively establish that the statute of limitations began to run before November 25, 2001; and (2) granting ADC's requests for attorney's fees and post-judgment interest. We address each issue in turn.

### *Statute of Limitations*

The statute of limitations for a breach-of-contract action is four years from the date the cause of action accrues. *See* Tex. Civ. Prac. & Rem. Code Ann. § 16.051 (West 2008); *Stine v. Stewart*, 80 S.W.3d 586, 592 (Tex. 2002). As a general rule, a cause of action accrues and the statute of limitations begins to run when facts come into existence that authorize a party to seek a judicial remedy. *Knott*, 128 S.W.3d at 221. In most cases, a cause of action accrues when a wrongful act causes a legal injury, regardless of when the plaintiff learns of that injury or if all resulting damages have yet occurred. *Id*.

In its motion for summary judgment, ADC argued that Hertzberg's suit was barred by limitations because even assuming ADC breached the employment contract, the latest date

5

at which the cause of action could have accrued was September 30, 2001, the day the contract expired, and Hertzberg did not file suit until more than four years later, on November 21, 2005. Although Hertzberg did not file a response to ADC's motion, he filed a cross-motion in which he argued that his cause of action did not accrue until November 25, 2001, the date on which he paid his tail-insurance premium. He asserts the same argument on appeal.

In order to determine when Hertzberg's cause of action accrued, we must first look at the injury on which he based his cause of action and then determine when the facts underlying the cause of action came into existence. *See id.*

### A. Alleged Injury

The grounds on which Hertzberg filed his suit include allegations that ADC did not: (1) provide him with three months' notice before terminating his employment; (2) provide him with ninety days' notice of its intent to not advance him to associate status and not extend the contract; and (3) pay for his tail-insurance policy or waive reimbursement of his moving expenses. Regarding the first alleged breach, Hertzberg asserted in his petition that ADC's failure to give him three months' notice of termination of the employment agreement breached the provision in the contract stating that "[t]his Agreement may be terminated by [ADC], for any reason, upon three (3) months notice in advance." Regarding the second and third alleged breaches—ADC's failure to give Hertzberg ninety days' notice of its intent to not promote him to an associate position and to not extend the contract, and ADC's failure to pay for Hertzberg's tail-insurance policy and waive the reimbursement of his moving expenses—Hertzberg asserted that those actions breached the provision of the contract stating:

6

[ADC] will notify physician ninety (90) days prior to end of employment agreement as to [ADC's] intent to advance or not advance physician to Associate status. Should [ADC] not advance physician to Associate status and elect not to extend physician employment agreement, [ADC] agrees to bear the expense of tail policy for professional liability to cover the period of employment physician [sic] while working at [ADC], and [ADC] agrees to waive physician's obligation to reimburse [ADC] for the expense of moving originally incurred to relocate physician to Austin at the commencement of this employment agreement.

## B.   When Facts of Alleged Injury Came Into Existence

Turning to the issue of when the facts underlying Hertzberg's cause of action came into existence, we conclude that they did so on September 11, 2001, when ADC notified Hertzberg in a memorandum that his final day of employment would be September 30, 2001, and that he was expected to pay for his tail-insurance policy and reimburse ADC for his moving expenses. It was at that point that the facts that allegedly caused him injury came into existence and authorized him to seek a judicial remedy. *See id.*

Specifically, the first alleged breach of the contract was made clear in the September 11 memo when ADC stated that it was "informing [Hertzberg] that [his] last day with ADC [would] coincide with the expiration of [his] current contract on 9/30/01." Assuming that allowing the contract to expire was the same as terminating the contract, ADC breached the contract by providing only nineteen days' notice of its termination rather than the three months' notice required by the contract.

ADC's second alleged breach of the contract was also evident in the September 11 memo when ADC stated that "a physician must be board certified in his/her specialty in order to

7

become an associate physician at ADC" and that "[a]s of [that] date, [Hertzberg had] been unable to provide proof of [his] board certification in Radiology, which preclude[d] any offer of an associate contract." Because the contract required ADC to notify Hertzberg ninety days prior to the end of the employment agreement of ADC's intent not to advance him to associate status, ADC allegedly breached the contract when it notified him on September 11, 2001, only nineteen days prior to the end of the agreement.

The third alleged breach was apparent in the September 11 memo when ADC stated that it expected Hertzberg "to reimburse ADC for the cost of [his] tail policy, as well as [his] moving expenses which were paid by [ADC]." Because the contract provided that ADC would pay for the tail insurance and moving expenses if it did not advance Hertzberg to associate status and did not extend the employment agreement, ADC allegedly breached the contract when it did not promote him and did not extend the agreement but still expected him to pay for his tail insurance and moving expenses.

Because facts authorizing Hertzberg to seek a judicial remedy came into existence on September 11, 2001, his claims accrued on that date. *See id*.; *Ambulatory Infusion Therapy Specialist, Inc. v. North Am. Adm'rs, Inc.*, 262 S.W.3d 107, 119 (Tex. App.—Houston [1st Dist.] 2008, no pet.) (cause of action accrued when plaintiff received defendant's letter stating that defendant would pay only $3,500 of plaintiff's $31,089.20 invoice, thus denying reimbursement for remainder).

8

## C. Other Arguments Regarding Accrual Date

Although Hertzberg raises other arguments that his cause of action did not accrue until November 2001, he has waived those arguments on appeal by not raising them in the trial court. Specifically, Hertzberg contends that this case is similar to three different types of cases, each of which allegedly supports a determination that his cause of action did not accrue until November 2001. The three different types of cases he relies upon include: (1) those involving insurance claims in which there is no "outright denial" of a claim and an insurance company "strings an insured along without denying or paying a claim;" (2) those involving installment contracts; and (3) those applying the discovery rule, in which the cause of action accrues when the plaintiff discovered or should have discovered facts establishing a cause of action. *See Murray v. San Jacinto Agency, Inc.*, 800 S.W.2d 826, 828 n.2 (Tex. 1990) (insurance claim); *Ehrig v. Germania Farm Mut. Ins. Ass'n*, 84 S.W.3d 320, 325 (Tex. App.—Corpus Christi 2002, pet. denied) (insurance claim); *F.D. Stella Prods. Co. v. Scott*, 875 S.W.2d 462, 465-66 (Tex. App.—Austin 1994, no writ) ("installment contract" approach); *Houston Livestock Show & Rodeo, Inc. v. Hamrick*, 125 S.W.3d 555, 569-70 (Tex. App.—Austin 2003, no pet.) (discovery rule). However, there is nothing in the record indicating that Hertzberg raised these arguments in the trial court, and he has therefore waived the arguments on appeal. *See* Tex. R. App. P. 33.1(a)(1); *Aldrich v. State*, 104 S.W.3d 890, 895-96 (Tex. Crim. App. 2003).

Even if he had not waived the arguments, the cases he cites in support of his arguments are inapplicable to this case. For example, this case does not involve an insurance claim, and the insurance-claim cases apply only when an insurance company does not provide an "outright

9

denial" of a claim and "strings along" an insured without approving or denying the claim. *See Murray*, 800 S.W.2d at 828 n.2; *Ehrig*, 84 S.W.3d at 325. Here, even assuming that ADC was acting in a role similar to an insurer and that the issue of payment of the tail insurance and moving expenses was akin to an insurance claim, ADC did not string Hertzberg along regarding its position on the payment issue. Rather, ADC specifically stated in its September 11, 2001 memo that it expected Hertzberg to pay for his tail-insurance policy and moving expenses. Regardless of any subsequent demands for payment Hertzberg may have made, he had sufficient facts with which to seek a judicial remedy as of the day he received the memo. *See Mid-South Telecomms. Co. v. Best*, 184 S.W.3d 386, 388, 391 (Tex. App.—Austin 2006, no pet.) (cause of action accrued when defendant defaulted on note, regardless of whether plaintiff still demanded and expected payment after default).

Regarding the installment-contract cases, Hertzberg cites to only one case, and the case is considerably different from the one before us. *See Scott*, 875 S.W.2d at 465-66. In *Scott*, the plaintiff sued the defendant for past-due monthly lease payments, and the issue was whether a new cause of action accrued—and thus a new statute of limitations began running—for each missed payment. *See id*. at 466. The case before us does not involve a lease, nor does it involve multiple payments. *Scott* is therefore inapplicable.

The cases involving the discovery-rule exception are also inapplicable to this case. The Texas Supreme Court has made it clear that the discovery-rule exception should be applied only where an injury is unlikely to be discovered within the prescribed limitations period despite due diligence. *See Via Net v. TIG Ins. Co.*, 211 S.W.3d 310, 313, 315 (Tex. 2006). The supreme court further stated that the discovery-rule exception should be restricted "to exceptional

10

cases" so as "to avoid defeating the purposes behind the limitations statutes." *Id*. at 313. Here, any breach of the contract by ADC was evident in the September 11, 2001 memorandum. Hertzberg makes no argument that he could not have discovered his injury during the four-year limitations period. In fact, he argues that he discovered the injury in November 2001, when he claims that he had to pay his insurance premium by the insurance company's deadline. Further, in the one case to which Hertzberg cites, *Houston Livestock*, this court pointed out that "[a] party seeking to avail itself of the discovery rule must plead the rule, either in its original petition or in an amended or supplemental petition in response to defendant's assertion to the defense as a matter of avoidance." 125 S.W.3d at 570. The record shows that Hertzberg never pleaded the discovery rule despite ADC's assertion of the affirmative defense of limitations in its answer.

Because the cases cited by Hertzberg are inapplicable to this case, we disregard them.

### D. Conclusion Regarding Accrual Date

As previously indicated, any injury suffered by Hertzberg was known to him on September 11, 2001, when he received ADC's memo. Thus, his cause of action accrued on that date. Hertzberg did not file suit until November 21, 2005. Because there is no genuine issue of material fact that he filed suit more than four years after his cause of action accrued, we affirm the trial court's summary judgment.

### *Attorney's Fees and Post-Judgment Interest*

In his second issue, Hertzberg contends that the trial court erred in granting ADC's requests for attorney's fees and post-judgment interest and that the amount of attorney's fees granted

11

was unreasonable. We review a trial court's decision to either grant or deny attorney's fees under an abuse-of-discretion standard, and we review the amount of attorney's fees awarded under a legal-sufficiency standard. *See Ridge Oil Co., Inc. v. Guinn Invs., Inc.*, 148 S.W.3d 143, 163 (Tex. 2004); *Aaron Rents, Inc. v. Travis Cent. Appraisal Dist.*, 212 S.W.3d 665, 671 (Tex. App.—Austin 2006, no pet.). A trial court abuses its discretion if it acts without reference to any guiding rules and principles. *Downer v. Aquamarine Operators, Inc.*, 701 S.W.2d 238, 241-42 (Tex. 1985). To determine whether a trial court abused its discretion, we must determine whether the trial court's action was arbitrary or unreasonable. *Id*. at 242. Because we review the amount of attorney's fees awarded under a legal-sufficiency review, we must view the evidence in a light that tends to support the disputed finding and disregard evidence and inferences to the contrary. *Wal-Mart Stores, Inc. v. Canchola*, 121 S.W.3d 735, 739 (Tex. 2003). If more than a scintilla of evidence supports the challenged finding, the legal-sufficiency challenge must fail. *Id*.

Although Hertzberg challenges the trial court's award of attorney's fees and post-judgment interest, he does not cite to any legal authority to support reversal of the trial court's determinations, thus waiving error on the issue. *See* Tex. R. App. P. 38.1(i) (requiring citation to authority). Even if he had not waived error, we find nothing in the record to support his assertions. The trial court's decision to award attorney's fees and post-judgment interest is supported by the contract, which states:

> If the services of an attorney are retained and/or if any action at law or in equity is brought to enforce or interpret the provisions of this Agreement or to collect any monies due hereunder, the prevailing party shall be entitled to reasonable attorney's fees together with

12

interest thereon at the highest rate provided by law in addition to any other relief to which he may be entitled at law or in equity.

A "prevailing party" is a party who successfully prosecutes the action or successfully defends against it, prevailing on the main issue, even if not to the extent of its original contention. *See Flagship Hotel, Ltd. v. City of Galveston*, 117 S.W.3d 552, 564 (Tex. App.—Texarkana 2003, pet. denied); *Dear v. City of Irving*, 902 S.W.2d 731, 739 (Tex. App.—Austin 1995, writ denied). Because ADC successfully defended against Hertzberg's suit by obtaining summary judgment on his claims, ADC is the prevailing party. *See Robbins v. Capozzi*, 100 S.W.3d 18, 27 (Tex. App.—Tyler 2002, no pet.). Thus, ADC is entitled to "reasonable attorney's fees together with interest thereon" as provided by the contract. Accordingly, the trial court's decision to grant ADC's requests for attorney's fees and post-judgment interest was not an abuse of discretion.

Regarding the amount of attorney's fees the trial court awarded, there are several factors a fact finder should consider in determining the reasonableness of a fee.[2] *Arthur Andersen*

---

[2] The factors include:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill required to perform the legal service properly;
>
> (2) the likelihood that the acceptance of the particular employment will preclude other employment by the lawyer;
>
> (3) the fee customarily charged in the locality for similar legal services;
>
> (4) the amount involved and the results obtained;
>
> (5) the time limitations imposed by the client or by the circumstances;

13

*& Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997). ADC's attorney, Scott Brutocao, testified at the hearing on attorney's fees as to several of the *Arthur Andersen* factors. First, he explained that the case was a standard breach-of-contract suit that required him and two associates at his firm to file an answer, perform research, conduct discovery, and prepare a summary-judgment motion. He also pointed out that additional research was required beyond that associated with a standard case because Hertzberg "was making a novel theory on the statute of limitations." Second, Brutocao testified that the case took him and two associates at his firm 70.7 hours total, and he supported his assertion with the billing records of his firm, which were introduced as an exhibit at the hearing. Third, Brutocao testified that he was familiar with customary rates charged by attorneys for similar legal services in Austin, and he explained that the hourly rate his firm charged ADC was $235 and remained fixed regardless of whether he or an associate worked on the case. He also stated that the hourly rate his firm charged ADC was less than his standard rate, which was $335 an hour. Fourth, he testified extensively about his own experience and abilities as well as the experience

---

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and

(8) whether the fee is fixed or contingent on results obtained or uncertainty of collection before the legal services have been rendered.

*Arthur Andersen & Co. v. Perry Equip. Corp.*, 945 S.W.2d 812, 818 (Tex. 1997).

and abilities of the two associates who worked on the case, and he offered his own and the two associates' curriculum vitae as exhibits to support his assertions. Finally, he testified that the total amount of attorney's fees for the case was $16,614.50 and that the amount was reasonable and necessary.

Because there is evidence of several of the eight *Arthur Andersen* factors supporting the reasonableness of the award of attorney's fees, we conclude that there is more than a scintilla of evidence to support the amount of the award. Accordingly, the trial court did not abuse its discretion in awarding $16,614.50 in attorney's fees to ADC. *See EMC Mortgage Corp. v. Davis*, 167 S.W.3d 406, 418-19 (Tex. App.—Austin 2005, pet. denied).

### Appellate Attorney's Fees

ADC requests that we award it appellate attorney's fees as monetary sanctions against Hertzberg for bringing a frivolous appeal. *See* Tex. R. App. P. 45 (authorizing appellate court to award prevailing party "just damages" upon determination that appeal is frivolous). In determining whether an appeal is frivolous, we review the record from the appellant's viewpoint and decide whether the appellant had reasonable grounds to believe the judgment could be reversed. *Smith v. Brown*, 51 S.W.3d 376, 381 (Tex. App.—Houston [1st Dist.] 2001, pet. denied). Whether to grant sanctions for a frivolous appeal is a matter of discretion that an appellate court exercises with prudence and caution and only after careful deliberation in truly egregious circumstances. *Goss v. Houston Cmty. Newspapers*, 252 S.W.3d 652, 657 (Tex. App.—Houston [14th Dist.] 2008, no pet.). Although we have rejected Hertzberg's arguments on appeal, we cannot characterize the appeal as objectively frivolous. Accordingly, we overrule ADC's request.

15

In the alternative, ADC asks that we remand the case to the trial court for the award of appellate attorney's fees. As previously indicated, the contract provides that the prevailing party in the suit is entitled to recover attorney's fees. However, ADC did not request appellate attorney's fees in the trial court and has not filed a notice of appeal on the issue. Accordingly, we must deny ADC's request. *See* Tex. R. App. P. 25.1(c) ("A party who seeks to alter the trial court's judgment or other appealable court order must file a notice of appeal."); *In re Lesikar*, 285 S.W.3d 577, 586 (Tex. App.—Houston [14th Dist.] 2009, no pet.) (appellee waived claim to appellate attorney's fees on remand because she did not request appellate fees, present evidence to support fees, or obtain finding or judgment on issue in trial court) (citing *Varner v. Cardenas*, 218 S.W.3d 68, 69-70 (Tex. 2007)).

## CONCLUSION

Because we find no error in the trial court's determinations, we affirm the trial court's summary judgment.

_____

David Puryear, Justice

Before Justices Patterson, Puryear and Pemberton

Affirmed

Filed: September 11, 2009

16