Yvonne Maria ESPINOZA, Appellant,

v.

The STATE of Texas, Appellee.

No. 04–04–00345–CR.

Court of Appeals of Texas,
San Antonio.

Oct. 5, 2005.

Julie B. Pollock, Hitchings & Pollock, San Antonio, for appellant.

Edward F. Shaughnessy, III, Asst. Crim. Dist. Atty.,San Antonio, for appellee.

Sitting: CATHERINE STONE, Justice, SARAH B. DUNCAN, Justice, KAREN ANGELINI, Justice.

## OPINION

Opinion by SARAH B. DUNCAN, Justice.

Yvonne Maria Espinoza was convicted of two counts of serious bodily injury to her son, Jarred, and sentenced to sixty years on each count. Because we overrule the five points of error Espinoza raises on appeal, we affirm the trial court's judgment.

### BACKGROUND

Espinoza waited approximately eight days to bring Jarred to Santa Rosa Children's Hospital to seek treatment for the burns she claimed he suffered accidentally. When examining Jarred, medical personnel also discovered a cut near his rectum. Suspicious, they called the San Antonio Police Department. After finishing paperwork at the hospital, Espinoza accompanied Detective Rene C. Gallegos to the station to provide a statement. In a subsequent interview with Detective Michael Ross that same day, Espinoza admitted she intentionally burned and cut Jarred. After Gallegos reduced Espinoza's confes-

sion to writing, Ross and Gallegos drove Espinoza to the hospital as she had requested. Maintaining surveillance while awaiting a warrant, Ross and Gallegos arrested Espinoza when she left the hospital.

## CUSTODIAL INTERROGATION

Espinoza first argues the trial court erred in denying her motion to suppress her oral and written statements because police officers failed to give her *Miranda* warnings and failed to comply with article 38.22 of the Texas Code of Criminal Procedure. Because we conclude Espinoza was not in custody when she made her statements, we disagree.

### *Standard of Review and Applicable Law*

The trial court's ruling on a motion to suppress is subject to review for abuse of discretion. *Balentine v. State*, 71 S.W.3d 763, 768 (Tex.Crim.App.2002). At a suppression hearing, the trial judge is the sole judge of the credibility of the witnesses and of the weight to be given their testimony. *Cantu v. State*, 817 S.W.2d 74, 77 (Tex.Crim.App.1991). Therefore, we view the evidence in the light most favorable to the trial court's ruling, affording almost total deference to the trial court's determination of historical facts that the record supports, especially when the fact findings are based on an evaluation of the witnesses' credibility and demeanor. *Guzman v. State*, 955 S.W.2d 85, 88–89 (Tex.Crim.App.1997). We review *de novo* the court's application of the law to the facts. *Id.* at 89.

Article 38.22 and *Miranda* apply only to statements made as the result of custodial interrogation. *See* TEX.CODE CRIM. PROC. ANN. art. 38.22, § 5 (Vernon 2003) (nothing in article precludes admission of statement made by accused if statement does not stem from custodial interro-

gation); *Miranda v. Arizona*, 384 U.S. 436, 478, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). A person is "in custody" only if a reasonable person would believe that he was deprived of his freedom to a degree associated with a formal arrest. *Dowthitt v. State*, 931 S.W.2d 244, 254 (Tex.Crim. App.1996) (citing *Stansbury v. California*, 511 U.S. 318, 321, 114 S.Ct. 1526, 128 L.Ed.2d 293 (1994)). In *Dowthitt*, the Texas Court of Criminal Appeals outlined four general situations that might constitute custody: (1) when the suspect is physically deprived of his freedom of action in any significant way, (2) when a law enforcement officer tells the suspect that he cannot leave, (3) when law enforcement officers create a situation that would lead a reasonable person to believe that his freedom of movement has been significantly restricted, and (4) when there is probable cause to arrest and law enforcement officers do not tell the suspect that he is free to leave. *Dowthitt*, 931 S.W.2d at 255. We are concerned with situations (1), (3), and (4). In interpreting the fourth situation, we consider the following factors: (1) whether the suspect arrived at the place of interrogation voluntarily, (2) the length of the interrogation, (3) whether the suspect's requests to see relatives and friends are refused, (4) the degree of control exercised over the suspect, and (5) whether a "pivotal admission established custody." *Xu v. State*, 100 S.W.3d 408, 413 (Tex.App.-San Antonio 2002, pet. ref'd). Because these factors are also determinative of whether custody attaches in the first and third situations, we focus our discussion on these factors.

### *Discussion*

As she herself admitted, Espinoza came to the station voluntarily, arriving at approximately 4:00 p.m. and waiting until Gallegos began questioning her at approxi-

mately 6:30 p.m. After obtaining Espinoza's statement, Gallegos concluded the interview at approximately 8:15 p.m. The evidence does not reveal that Espinoza made a specific request to see friends or relatives. Espinoza testified she asked Gallegos several times whether she would be able to go back to the hospital and see Jarred and he responded that she would. She also testified that, in response to what she perceived as Ross's bullying tactics,[1] she informed the detectives several times that she just wanted to go back and be with Jarred. However, it is unclear whether these pleas were truly requests to see Jarred or non-responsive answers to Ross's questions. Thus, the trial court could have chosen to believe Espinoza's pleas were in fact non-responsive answers.

The degree of control exercised over Espinoza did not rise to a level that deprived her of her freedom of action in any significant way or that would lead a reasonable person to believe that her freedom of movement had been significantly restricted. As Espinoza herself admitted, she was never placed under arrest or in handcuffs, was alone for approximately two hours while waiting for Gallegos, was permitted to use the restroom whenever she wanted, was never told she could not leave while waiting or during the interview, was told during the interview several times that she was there voluntarily and could leave at any time, and was permitted to leave at the end of the interview. Espinoza did testify that the door to the office in which she waited for Gallegos was closed, but not locked, she asked to use the telephone but was told she could not, she was never told that she could leave while she waited for Gallegos and, in fact, when she asked if she could leave, the police officers around would tell her to ask Gallegos, and that each time she went to use the restroom while waiting for Gallegos she was asked what she was doing and escorted to and from the restroom. However, the court could have chosen to disregard some aspects of Espinoza's testimony and chosen to believe Gallegos's, who testified that Espinoza "walk[ed] freely in the hallways."

And, given the existence of other circumstances, Espinoza's pivotal admission did not establish custody. It is true that when Gallegos began interviewing Espinoza he knew she had told the responding officer that she had left Jarred in the bathtub with hot water running and that the cut was due to a razor. And when Espinoza, having already been interviewed by Ross and now dictating her incriminating statement to Gallegos, admitted she purposefully made the water hotter because of her anger and held Jarred under the scalding water, Gallegos admitted he might have had probable cause to arrest Espinoza. By this time, Gallegos and Ross had ruled out Espinoza's boyfriend as a suspect and thus the focus was entirely on Espinoza. While it is debatable whether Ross's bullying tactics could be considered a manifestation of his and Gallegos's belief that Espinoza was the prime suspect, the fact remains that, unlike the suspect in *Xu*, who was informed at the beginning of his first interview at the station that he was free to leave but not again in his second interview five hours later when he made his pivotal admission, Espinoza was repeatedly told she could leave. And, unlike the suspect in *Xu*, Espinoza was interviewed once for four hours, not four separate times during a fifteen-hour span. Moreover, Espinoza's interview occurred eight days after the event, not immediately thereafter; there is no evidence of any language barriers; Espinoza was unemotional; and Espinoza was not denied any

1. Ross testified he called Espinoza a liar, "hollered" at her, and "got in her face."

opportunity to speak to a friend or relative. *See Xu,* 100 S.W.3d at 410–12, 414–15.

The trial court's findings that Espinoza freely went to the station, was never restrained in her movements, and was free to leave at all times as communicated to her are supported by the record. Based on these findings, the court correctly concluded that Espinoza was not in custody. Because Espinoza was not in custody while being questioned, the failure to advise her of her rights did not render the statements inadmissible under either *Miranda* or article 38.22. We therefore conclude that the trial court did not abuse its discretion in denying Espinoza's motion to suppress.

### LESSER-INCLUDED OFFENSE

■ Espinoza next argues the trial court erred in denying her motion to instruct the jury on the lesser included count of bodily injury. We disagree.

■ To determine whether a charge on a lesser included offense should have been given, we apply a two-pronged test. *See Mathis v. State,* 67 S.W.3d 918, 925 (Tex. Crim.App.2002). First, the lesser included offense must be included within the proof necessary to establish the offense charged. *Rousseau v. State,* 855 S.W.2d 666, 672–73 (Tex.Crim.App.), *cert. denied,* 510 U.S. 919, 114 S.Ct. 313, 126 L.Ed.2d 260 (1993). Second, the record must contain some evidence that would permit a rational jury to acquit the defendant of the greater offense while convicting him or her only of the lesser included offense. *Id.* We are concerned with the second-prong.

"Serious bodily injury" means bodily injury "that creates a substantial risk of death or that causes death, serious permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." TEX. PEN.CODE ANN. § 1.07(46) (Vernon Supp.2004). In contrast, "bodily injury" is "physical pain, illness, or any impairment of physical condition." *Id.,* § 1.07(8). Espinoza contends a rational jury should have found her guilty only of bodily injury because her brother testified that Jarred was released from the hospital the next day, did not need skin grafts, and had burns that healed well and left only a small faded scar. However, "[t]he relevant issue [is] the disfiguring and impairing quality of the bodily injury as it was inflicted, not after the effects had been ameliorated or exacerbated by other actions such as medical treatment." *Brown v. State,* 605 S.W.2d 572, 575 (Tex. Crim.App. [Panel op.] 1980), *overruled on other grounds, Hedicke v. State,* 779 S.W.2d 837 (Tex.Crim.App.1989), *cert. denied,* 493 U.S. 1044, 110 S.Ct. 840, 107 L.Ed.2d 836 (1990). Here, Espinoza admitted she intentionally made the water hotter to the point that it "was scorching," held Jarred under the water for ten to fifteen minutes because of her anger, and listened to Jarred cry and scream. And Jarred's treating physician testified that, upon Jarred's admission to Santa Rosa eight days later, Jarred had second and third degree burns over fifteen percent of his body and the extent of the injury posed a high risk of death from potential bacterial infection if left untreated. She also testified the third-degree burns on Jarred's toes fused them together, permanently disfiguring them. This evidence establishes the disfiguring and impairing quality of Jarred's bodily injury at the time Espinoza burned him. Because there is no evidence that Jarred's injury was not "serious" within the meaning of the Penal Code, Espinoza has failed to satisfy *Rousseau's* second-prong. Accordingly, we hold the trial court did not err in refusing Espinoza's request for a charge on the lesser-included offense of bodily injury.

### EVIDENTIARY HEARING

■ Finally, Espinoza argues the trial court erred in denying her an evidentiary

hearing on her motion for new trial grounded upon newly-discovered evidence. We again disagree.

■ A defendant is not entitled to ·a hearing on a motion for new trial unless the motion and supporting affidavits reflect that reasonable grounds exist for granting a new trial. *Wallace v. State,* 106 S.W.3d 103, 108 (Tex.Crim.App.2003). Reasonable grounds do·not exist·for granting a motion for new trial grounded upon newly-discovered evidence unless the motion meets the requirements of article 40.001 of the Texas Code of Criminal Procedure, which provides that "[a] new trial shall be granted an accused where material evidence favorable to the accused has been discovered since trial." TEX.CODE CRIM. PROC. ANN. art. 40.001 (Vernon 2003). Interpreting this statute, the Texas Court of Criminal Appeals has held that "a defendant is entitled to have his motion for new trial granted if":

> (1) the newly discovered evidence was unknown to him at the time of trial; (2) his failure to. discover the new evidence ·was not due to his lack of due diligence; (3) the new evidence is admissible and not merely cumulative, corroborative, collateral, or impeaching; and (4) the new evidence is probably true and will probably bring about a different result in a new trial.

*Wallace,* 106 S.W.3d at 108; *see also Keeter v. State,* 74 S.W.3d 31, 36–37 (Tex.Crim. App.2002). A matter is collateral if it seeks only to test a witness's general credibility. *Keller v. State,* 662 S.W.2d 362, 365 (Tex.Crim.App.1984).

In her motion for new trial, Espinoza alleges she is entitled to a new trial because of "newly-discovered evidence" consisting of a newspaper article reporting a witness's belief that his statement was coerced by Ross, the record of a hearing concerning this witness's testimony, and an attorney's affidavit expressing his belief that his client's confession was coerced by Ross. However, these accounts seek only to test Ross's general credibility and are therefore merely collateral. Accordingly, Espinoza's motion for new trial grounded upon this allegedly newly-discovered evidence fails to reflect a reasonable ground for granting a new trial.

Espinoza also argues the trial court erred in denying her an evidentiary hearing on her motion for new trial because she was guaranteed such a hearing by section 6 of article 38.22 of the Texas Code of Criminal Procedure, which provides that "the state or the defendant shall be entitled to present any new evidence on the issue of the voluntariness of the statement prior to the court's final ruling and order stating its findings." TEX.CODE CRIM. PROC. ANN. art. 38.22, § 6 (Vernon 2003). However, Espinoza's argument relies solely upon the statutory language; she cites no authority supporting her interpretation of the statute. Nor have we found any such authority. We must therefore be guided by the usual rules of statutory construction.

■ "In interpreting a statute, we adhere to our cardinal rule of statutory construction: We interpret a statute in accordance with the plain meaning of its language, unless the language is ambiguous or the plain meaning leads to absurd results that the legislature could not possibly have intended." *Griffith v. State,* 166 S.W.3d 261, 262 (Tex.Crim.App.2005). Here, Espinoza's construction of section 6 would lead to an absurd result that the legislature could not possibly have intended: requiring a trial court to hold an evidentiary hearing every time a defendant moves for a new· trial on the grounds of newly-discovered evidence relating to the voluntariness of a statement without regard to whether the allegedly newly-dis-

covered evidence is merely collateral to, or cumulative of, other evidence presented at trial or whether it would probably bring about a different result. For this reason, we hold section 6 implicitly requires a movant to meet at least the first, third, and fourth requirements most recently set forth in *Keeter*: (1) the evidence is "new"; (2) the "new evidence is admissible and not merely cumulative, corroborative, collateral, or impeaching; and (3) the new evidence is probably true and will probably bring about a different result in another trial." *Keeter*, 74 S.W.3d at 36–37. As we stated above, Espinoza's allegedly newly-discovered evidence is merely collateral.[2]

Whether viewed under article 40.001 or article 38.22 of the Texas Code of Criminal Procedure, Espinoza's motion for new trial fails to reflect a reasonable ground for granting a new trial. We therefore hold the trial court did not err in denying her an evidentiary hearing on the motion and affirm the trial court's judgment.

2. Because we are able to resolve this issue on this basis, we do not decide the meaning of "the court's final ruling and order stating its findings" as used in section 6.