

# NUMBERS 13-05-00097-CR & 13-05-00098-CR

# COURT OF APPEALS

# THIRTEENTH DISTRICT OF TEXAS

# CORPUS CHRISTI - EDINBURG

CHRIS GARCIA,                                                                    Appellant,

v.

THE STATE OF TEXAS,                                                              Appellee.

## On appeal from the 179th District Court
## of Harris County, Texas.

# MEMORANDUM OPINION

**Before Chief Justice Valdez and Justices Benavides and Vela
Memorandum Opinion by Justice Benavides**

On July 31, 2008, we ordered these two causes abated and remanded them to

the trial court for an evidentiary hearing on appellant Chris Garcia's amended motion for

new trial based on newly discovered evidence.  *See Garcia v. State*, 291 S.W.3d 1, 18

(Tex. App.—Corpus Christi 2008, no pet.).[1] We further ordered that if the motion for new trial was overruled, the record should be supplemented and the parties would be permitted to brief any issues related to the ruling. *See id.*

By two issues, Garcia appeals the trial court's post-hearing denial of his motion for new trial based on newly discovered evidence and argues that: (1) the trial court abused its discretion in its ruling because it found the testimony of Samuel Abernathy credible; and (2) the trial court abused its discretion in its ruling because the State failed to disclose impeachment evidence in violation of federal constitutional law. We affirm the trial court's judgments.

## I.      BACKGROUND

After a bench trial,[2] Garcia was found guilty of two offenses: (1) unlawful possession of a firearm by a felon, *see* TEX. PEN. CODE ANN. § 46.04(a)(1) (West 2011); and (2) aggravated assault with a deadly weapon. *See id.* § 22.02(a)(2) (West 2011). The trial court sentenced Garcia to ten years' and fifty years' imprisonment for the respective offenses.[3]

Pursuant to this Court's order, the trial court conducted a hearing on Garcia's amended motion for new trial. Garcia premised his motion for new trial on an affidavit from private investigator P.M. Clinton, who affirmed that a former investigator from the Harris County District Attorney's office, Jerry L. Roberts, told him that Harris County

---

[1] This case is before this Court on transfer from the First Court of Appeals in Houston pursuant to an order issued by the Supreme Court of Texas. *See* TEX. GOV'T CODE ANN. § 73.001 (West 2005).

[2] Cause numbers 13-05-097-CR and 13-05-098-CR were tried jointly by bench trial.

[3] As the parties are familiar with the facts of the underlying trial on the causes, we will not recite them in this opinion. *See* TEX. R. APP. P. 47.1. Instead, we will incorporate the factual and procedural background detailed in this Court's previous order of abatement. *See Garcia v. State*, 291 S.W.3d 1, 3–7 (Tex. App.—Corpus Christi 2008, no pet.). We will, however, provide pertinent background information from the hearing on the motion for new trial relevant to this appeal.

Assistant District Attorney, Joni Vollman, told Abernathy, that he would face jail time if he did not testify against Garcia at trial. Clinton's affidavit also states that Roberts told him that Abernathy's story of the events leading up to the shooting was inconsistent. Garcia claimed in his motion that this newly-discovered evidence entitled him to a new trial.

At the hearing on November 24, 2009, the trial court heard the following pertinent testimony.

## A. Defense Witnesses

Defense trial counsel, Thomas L. Royce, testified that he retained Clinton to assist him in preparing Garcia's motion for new trial and Clinton subsequently told him about the information that he acquired from Roberts. Royce stated that he told Clinton to prepare an affidavit regarding that information, but Royce was subsequently replaced by new counsel. Royce testified that Abernathy's credibility was at issue because he was the State's only eyewitness.

Clinton testified that during the investigation of this case, he held at least two conversations with Roberts about Roberts's information and recollection of his work on the Garcia case. Clinton confirmed that the material included in his affidavit attached to Garcia's motion for new trial was accurate and correct, including the threat of prosecution toward Abernathy if he did not testify. On cross-examination, Clinton agreed with the prosecution that in his conversations with Roberts, the only agreement made known to him was the immunity agreement between the State and Abernathy.

Abernathy stated that representatives from the Harris County District Attorney's Office told him prior to Garcia's trial, that if he did not testify against Garcia over this shooting, he would face prison time for burglary of a habitation. Abernathy admitted

3

that he did not mention the threat of prosecution during the trial because he was taking medication at the time of trial and did not understand the questions being asked. Regardless, he testified that he told the truth on the witness stand at Garcia's trial. At the hearing, Abernathy was appointed counsel to advise him on the consequences of committing perjury. He later returned to the witness stand, and testified that he again did not understand several of the questions being asked of him, and again asserted that he was pressured to testify, and that if he did not do so, he faced time in prison. Abernathy claimed, however, that he was never forced by anyone at the Harris County District Attorney's office to provide false testimony against Garcia, and said, "They just wanted me to testify against him that he shot me. That was it."

## B. State's Witnesses

Defense attorney, Deborah Keyser, served as Abernathy's court-appointed attorney prior to Garcia's trial. Keyser testified that she reviewed the immunity agreement given to Abernathy in exchange for his testimony. The State elicited testimony from Keyser that she observed interactions between Vollman and Abernathy prior to trial which were friendly, non-threatening, and assertive.

Retired Houston police detective, Thomas McCorvey, testified that he was assigned to investigate Abernathy's shooting, and he attempted to make contact with Abernathy shortly after the shooting, but Abernathy was in a coma. McCorvey stated that he was later contacted by Abernathy's girlfriend who told him that Abernathy wished to speak with him about the shooting. McCorvey later met with Abernathy at Quinton Meece hospital, where Abernathy was coherent, able to communicate, and was articulate. At that time, McCorvey recorded an interview with Abernathy in which

4

Abernathy identified Garcia as the person who shot him.

Former Harris County District Attorney investigator Roberts admitted during direct examination that he spoke to Clinton regarding Garcia's case following the trial. Roberts affirmatively negated many of the statements set forth in Clinton's affidavit. More specifically, he denied observing Vollman advising Abernathy of any potential criminal liability that he might face.

Vollman refuted the allegations that she told Abernathy that he faced jail time if he did not testify. On the State's re-direct examination, Vollman stated that she did not need to take a threatening or coercive approach with Abernathy to testify because she knew that the trial court would compel him to testify in return for Abernathy's immunity.

After the hearing, the trial court again denied Garcia's amended motion for new trial, and this appeal ensued.

## II. MOTION FOR NEW TRIAL BASED ON NEWLY-DISCOVERED EVIDENCE

In Garcia's first issue, he urges that the trial court abused its discretion in overruling Garcia's amended motion for new trial based on newly-discovered evidence elicited from Abernathy, after finding Abernathy credible.

### A. Standard of Review and Applicable Law

The grant or denial of a motion for new trial rests solely within the trial court's discretion. *Lewis v. State*, 911 S.W.2d 1, 7 (Tex. Crim. App. 1995) (en banc); *Young v. State*, 177 S.W.3d 136, 140 (Tex. App.—Houston [1st Dist.] 2005, pet. dism'd). "We do not substitute our judgment for that of the trial court, but rather decide whether the trial court's decision was arbitrary or unreasonable." *Lewis*, 911 S.W.2d at 7. The code of criminal procedure gives an accused a right to a new trial where material evidence

5

favorable to the accused has been discovered since trial.  *See* TEX. CODE CRIM. PROC. ANN. art. 40.001 (West 2006).  In order to meet the statutory requirement of materiality as articulated in article 40.001, the accused must satisfy the following four-part test:  (1) the newly discovered evidence was unknown or unavailable to the movant at the time of trial; (2) the movant's failure to discover or obtain the evidence was not due to lack of diligence; (3) the new evidence is admissible and is not merely cumulative, corroborative, collateral, or impeaching; and (4) the new evidence is probably true and will probably bring about a different result on another trial.  *Keeter v. State*, 74 S.W.3d 31, 36–37 (Tex. Crim. App. 2002).  Accordingly, the trial court's discretion extends to "situations in which the newly-discovered evidence is the retraction of a witness's testimony," and the trial court has the discretion to determine the credibility of witnesses and whether the evidence is probably true.  *Id.*

## B.   Discussion

Garcia argues that, after his trial, he discovered that the Harris County District Attorney's office allegedly compelled Abernathy to testify at trial through hints of possible prosecution and prison time.  Garcia further asserts that had this newly-discovered information been available at trial, he could have used it to impeach Abernathy's testimony.  Accordingly, Garcia argues that the trial court abused its discretion in denying his amended motion for new trial based on this newly-discovered evidence. We disagree.  We will apply the four-part test articulated in *Keeter* to the facts on record and determine whether the trial court abused its discretion.  *See id.*

First, there is no evidence that Garcia knew that Abernathy had been allegedly threatened with jail time if he did not testify, and second, Garcia does not show a lack of

6

due diligence to obtain or discover this evidence. *See id.* To the contrary, at trial, the following exchange took place between Abernathy and trial defense counsel:

DEFENSE COUNSEL: Were you worried that—did anyone say that you go back to the pen? Did anyone say they could put the cocaine on you?

ABERNATHY: I'm not worried about going back to prison. I been there twice.

DEFENSE COUNSEL; No big thing, huh? Anybody say you could go back to prison for the guns, too?

ABERNATHY: No, they didn't.

. . . .

DEFENSE COUNSEL: Anybody else mention anything about you going to the pen?

ABERNATHY: No, I asked.

DEFENSE COUNSEL: What did they tell you?

ABERNATHY: They told me the State had no charges on me.

. . . .

DEFENSE COUNSEL: Did anybody tell you they didn't have a case unless you testified?

ABERNATHY: No.

At the hearing on the amended motion for new trial, however, Abernathy's story changed. Abernathy stated at the hearing that he was told that "if [he] didn't cooperate with [the prosecution] that [he] was going back to the penitentiary for 20 years." These facts support a conclusion, based on the record, that Garcia satisfied the first and second prongs of the *Keeter* test.

Next, we examine the third prong: whether the new evidence is admissible and

7

is not merely cumulative, corroborative, collateral, or impeaching. Abernathy's testimony is neither cumulative because it was new evidence to the case, corroborative because it originated with him, nor collateral or impeaching. The test for whether a matter is collateral is if it "seeks only to test a witness's general credibility." *Espinoza v. State*, 185 S.W.3d 1, 6 (Tex. App.—San Antonio 2005, no pet.) (citing *Keller v. State*, 662 S.W.2d 362, 365 (Tex. Crim. App. 1984)).

Abernathy's testimony about alleged pressure from prosecutors differed from his testimony at trial and does—to an extent—test his general credibility; however, this evidence appears not to be offered solely for that purpose. Also, for the same reasons that the testimony and evidence is not solely collateral, it is not solely impeaching. While Garcia admits in his brief that this new evidence could have been used to impeach Abernathy at trial, its offer serves other purposes such as clearing up false impressions and putting forth new factual questions for the trial court. A complete reading of the record allows for a reasonable conclusion that Garcia successfully met the third prong of this analysis.

We now turn to the final prong of the test for materiality: whether the new evidence is probably true and will probably bring about a different result on another trial. The "probably true" requirement has been explained by the Texas Court of Criminal Appeals as follows:

All this really means is that the whole record presents no good cause[4] to

---

[4] Some examples of when new evidence has been found not to be "probably true" include: (1) when "opposed by affidavit of testimony at the hearing showing the new witness was not or could not have been in a position to know the material fact he purports to know;" (2) "the new witness is impeached at the hearing by a prior inconsistent statement;" (3) "the new evidence contradicts either the mass of reliable testimony elicited at trial, or almost conclusive physical circumstantial evidence developed at trial, or the defendant's own testimony at trial;" and (4) "the new testimony is internally inconsistent or otherwise inherently suspect." *Jones v. State*, 711 S.W.2d 35, 37 n. 4 (Tex. Crim. App. 1986) (en banc) (citations

8

doubt the credibility of the witness whose testimony constitutes the new evidence, 'either by reason of the facts proven at the trial or by the controverting affidavits on the motion, or otherwise.'

*Keeter*, 74 S.W.3d at 38 (quoting *Jones v. State*, 711 S.W.2d 35, 37 n.4 (Tex. Crim. App. 1986) (en banc)). The record shows that the trial court heard testimony from Abernathy, Clinton, Roberts, and Vollman—all of whom testified with respect to whether the testimony was elicited under pressure or not. The trial court—well-within its discretion—took the testimony presented and made a determination as to who was credible, how much weight to give each witness's testimony, and whether good cause existed to doubt the credibility of the testimony that constituted the new evidence. *See Keeter*, 74 S.W.3d at 38; *see also Jones*, 711 S.W.2d at 37. In the end, the trial court found Vollman and Abernathy credible and that the new evidence was probably not true. In doing so, the trial court did not act arbitrarily or unreasonably and thus did not abuse its discretion, when it found Abernathy credible, yet still denied Garcia's amended motion for new trial, because it is within the trial court's discretion to determine how much weight to give certain portions of Abernathy's testimony, as well as to take into account other witnesses' testimony and credibility. *See Keeter*, 74 S.W.3d at 38–39. Accordingly, we overrule Garcia's first issue.

## III. *BRADY* AND *GIGLIO* ISSUES

In his second issue, we determine whether the trial court abused its discretion in overruling Garcia's amended motion for a new trial because the State allegedly failed to disclose impeachment evidence as required by the federal constitutional holdings in *Brady v. Maryland*, 373 U.S. 83 (1963) and *Giglio v. United States*, 405 U.S. 150 (1972).

---

omitted).

9

**A.    Standard of Review and Applicable Law**

We review the trial court's denial of a motion for new trial for an abuse of discretion.    *See Lewis*, 911 S.W.2d at 7.    We determine only whether the trial court's ruling was arbitrary or unreasonable to amount to an abuse of discretion.    *Id.*

The United States Supreme Court addressed issues of newly-discovered post-trial evidence in two landmark cases—*Brady* and *Giglio*.    In *Brady*, the accused was found guilty of first-degree murder and was sentenced to death, and on appeal, his case was remanded for a retrial on the issue of punishment because the prosecutors suppressed a statement by a co-defendant in which the co-defendant admitted to committing the actual murder.    *See* 373 U.S. at 85.    In a majority opinion that affirmed the state appellate court, the Court held that "suppression by the prosecution of evidence favorable to an accused . . . violates due process, where the evidence is material either to guilt or punishment, irrespective of the good faith or bad faith of the prosecution." *Brady*, 373 U.S. at 87; *see* U.S. CONST. amend XIV, § 1.    In *Giglio*, the Supreme Court addressed the issue of whether a new trial was warranted based upon the government's failure to disclose an alleged promise of leniency for the accused's co-conspirator in exchange for testimony.    *See* 405 U.S. at 150–51.    The Court later held that credibility of the co-conspirator witness was "an important issue in the case, and evidence of any understanding or agreement as to a future prosecution would be relevant to his credibility," and ordered a new trial on the accused's guilt.    *See Giglio*, 405 U.S. at 154–55.

**B.    Discussion**

Garcia contends that he was entitled to have known of Abernathy's alleged threat of prosecution for failure to testify at the time of trial and because this was not disclosed to him, a new trial is warranted under the standards set forth in *Brady* and *Giglio*.   To the extent that we determine that the *Brady* and *Giglio* cases are distinguishable from the present case, we disagree with Garcia.   To establish a *Brady* violation, a defendant must show:   (1) that the State suppressed evidence; (2) the suppressed evidence is favorable to the defendant; and (3) the suppressed evidence is material.   *See Harm v. State*, 183 S.W.3d 403, 406 (Tex. Crim. App. 2006); *Little v. State*, 991 S.W.2d 864, 866 (Tex. Crim. App. 1999).   In this case, the trial court found—after the hearing on Garcia's amended motion for new trial—that there was no newly-discovered evidence or any suppression of threats of prosecution toward Abernathy to warrant any possible *Brady* violations.   This case is further distinguishable from *Giglio* because in *Giglio*, the prosecutors admitted later that a promise of immunity was in fact offered to the testifying witness, despite representations to the contrary during trial.   *See Giglio*, 405 U.S. at 152.   Here, the prosecutor testified, and the trial court believed, that no threats were made toward Abernathy.[5]  Because we conclude that the trial court's findings were within its discretion, not arbitrary or unreasonable, and did not support Garcia's alleged *Brady* violation, we overrule the second issue.   *See Lewis*, 911 S.W.2d at 7; *See Harm*, 183 S.W.3d at 406.

---

[5] Assuming, without deciding, that a showing was made that the State suppressed evidence, Garcia did not show further proof that the evidence would be favorable to his case and that the evidence is material to amount to a *Brady* violation.   *See Harm v. State*, 183 S.W.3d 403, 406 (Tex. Crim. App. 2006).

## IV.  CONCLUSION

We affirm the trial court's judgments.

_____
GINA M. BENAVIDES,
Justice

Do not publish.
TEX. R. APP. P. 47.2(b).

Delivered and filed the
22nd day of March, 2012.