

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-13-00102-CR

The **STATE** of Texas,
Appellant

v.

Aghil **ANSARI**,
Appellee

From the County Court at Law No. 13, Bexar County, Texas
Trial Court No. 386397
The Honorable Monica A. Gonzalez, Judge Presiding

Opinion by:     Karen Angelini, Justice

Sitting:         Karen Angelini, Justice
                 Marialyn Barnard, Justice
                 Rebeca C. Martinez, Justice

Delivered and Filed:  October 30, 2013

REVERSED AND REMANDED

        The State of Texas appeals from an order granting a motion to suppress evidence in a

criminal case. The defendant in the case was Aghil Ansari. In one issue, the State argues the trial

court abused its discretion by suppressing Ansari's statements to police because Ansari was not in

custody at the time his statements were made. We sustain the State's issue, and reverse and remand

this case to the trial court for further proceedings.

**BACKGROUND**

Ansari was charged by information with assault bodily injury-married. The information was filed after two uniformed police officers were dispatched to Ansari's residence to investigate a domestic violence call. The complainant was Ansari's wife. The first officer, David Tavitas, spoke to the complainant and Ansari. The second officer, identified in the record only as Ayala, did not. Tavitas first spoke to the complainant and her daughter in the doorway of the residence. The complainant had a heavy accent and her daughter helped the complainant communicate with the officer. With her daughter's assistance, the complainant told Tavitas that Ansari had assaulted her. Tavitas saw that the complainant had redness on her cheek and a busted lip. While Tavitas was talking to the complainant in the doorway of the residence, Ansari was sitting nearby at a table inside the residence. After speaking to the complainant, Tavitas walked over to Ansari and asked him what had happened. Ansari, who was still seated at the table, explained that he and the complainant were arguing, the complainant spat in his direction, and he found this insulting. Ansari said he had hit the complainant because she had spat in his direction. Tavitas then went back to the foyer to talk to the complainant. The complainant confirmed she had spat in Ansari's direction but only after he had hit her.

After Tavitas spoke to both Ansari and the complainant, Tavitas went outside to place a call to a detective in a "follow-up" police unit. Ayala came inside the residence to "keep the peace" between the complainant and Ansari. While outside, Tavitas discussed the situation with the detective, who agreed Tavitas should arrest Ansari for family violence. Tavitas then went back inside the residence, placed Ansari in handcuffs, and told him he was under arrest. According to Tavitas, the entire investigation and accompanying arrest took only thirty to forty minutes.

Ansari filed a motion to suppress, asserting that the statements he made to Tavitas were inadmissible at trial because they were made during a custodial interrogation and he was not given

any *Miranda* or other statutory warnings. Only Tavitas and Ansari testified at the suppression hearing. Their accounts of the circumstances surrounding Ansari's questioning were consistent. The trial court granted the motion and suppressed Ansari's statements to Tavitas. No findings of fact or conclusions of law were filed; however, in explaining its ruling the trial court stated "a reasonable person in [Ansari's] position would not have felt free to leave." The State appealed.

## STANDARD OF REVIEW

In reviewing the trial court's ruling on a motion to suppress, the overarching standard is abuse of discretion. *State v. Whittington*, 401 S.W.3d 263, 272 (Tex. App.—San Antonio 2013, no pet.). Under the abuse of discretion standard, we overturn the trial court's ruling only if it is outside the zone of reasonable disagreement. *Martinez v. State*, 348 S.W.3d 919, 922-23 (Tex. Crim. App. 2011). A trial court's ultimate custody determination presents a mixed question of law and fact. *Herrera v. State*, 241 S.W.3d 520, 526-27 (Tex. Crim. App. 2007). When, as here, the trial court's ultimate custody determination does not turn on credibility and demeanor, we apply a *de novo* standard of review. *Id.* at 527; *State v. Ortiz*, 382 S.W.3d 367, 372 (Tex. Crim. App. 2012).

## CUSTODY DETERMINATIONS

The warnings set out in *Miranda v. Arizona*, 384 U.S. 436, 467-73 (1966), safeguard a person's constitutional privilege against self-incrimination during a custodial interrogation. *Herrera*, 241 S.W.3d at 525. Custodial interrogation is questioning by law enforcement officers after a person has been taken into custody or deprived of his freedom of action in any significant way. *Id.* (citing *Miranda*, 384 U.S. at 444). Unwarned statements obtained as a result of custodial interrogation may not be used by the State in a criminal proceeding during its case-in-chief. *Id.* However, the State bears no burden to show compliance with *Miranda* or the similar warnings required by article 38.22 of the Texas Code of Criminal Procedure, unless and until a defendant

establishes that the statements he seeks to suppress were the product of custodial interrogation. *Id.* at 526.

To determine whether an individual is in custody for purposes of *Miranda*, the United States Supreme Court has announced two essential inquiries: (1) "what were the circumstances surrounding the investigation;" and (2) "given those circumstances, would a reasonable person have felt he or she was not at liberty to terminate the interrogation and leave." *Thompson v. Keohane*, 516 U.S. 99, 112 (1995). According to the Texas Court of Criminal Appeals, the primary inquiry in making a custody determination is whether a reasonable person would perceive the detention to be a restraint on his movement comparable to formal arrest, given all of the objective circumstances. *Ortiz*, 382 S.W.3d at 372. Under this inquiry, courts look only to the objective factors surrounding the detention. *Id*. Ordinarily, the subjective beliefs of the detaining officer are not included in the calculation of whether a suspect is in custody. *Id*. at 372-73. However, if the officer manifests his belief to the detainee that he is a suspect, then that officer's subjective belief becomes relevant to the determination of whether a reasonable person in the detainee's position would believe he is in custody. *Id*. at 373.

The Texas Court of Criminal Appeals has identified four general situations that may constitute custody: (1) when the suspect is physically deprived of his freedom in any significant way, (2) when a law enforcement officer tells the suspect he cannot leave, (3) when law enforcement officers create a situation that would lead a reasonable person to believe his freedom of movement has been significantly restricted, and (4) when there is probable cause to arrest and law enforcement officers do not tell the suspect he is free to leave. *Dowthitt v. State*, 931 S.W.2d 244, 255 (Tex. Crim. App. 1996). As to the fourth situation, the officer's knowledge of probable cause must be manifested to the suspect. *Id*.; *Miller v. State*, 196 S.W.3d 256, 265 (Tex. App.— Fort Worth 2006, pet. ref'd). Such manifestation could occur if information sustaining the probable

cause was related by the officer to the suspect or by the suspect to the officer. *Dowthitt*, 931 S.W.2d at 255; *Miller*, 196 S.W.3d at 265. The fourth situation does not automatically establish custody; custody is only established if the manifestation of probable cause, combined with other circumstances, would lead a reasonable person to believe that he is under restraint to the degree associated with an arrest. *Dowthitt*, 931 S.W.2d at 255; *Miller*, 196 S.W.3d at 265. Situations in which the manifestation of probable cause triggers custody are unusual. *Hodson v. State*, 350 S.W.3d 169, 174 (Tex. App.—2011, pet. ref'd) (citing *State v. Stevenson*, 958 S.W.2d 824, 829 n.7 (Tex. Crim. App. 1997)).

Courts evaluate whether a person has been detained to the degree associated with a formal arrest on an *ad hoc*, or case-by-case, basis. *Ortiz*, 382 S.W.3d at 372; *Dowthitt*, 931 S.W.2d at 255. In conducting this inquiry, courts consider a variety of factors, including but not limited to the location of the questioning; the duration of the questioning; the tone and content of the questioning; the number of officers present during the questioning; and whether the officers honored requests for food, breaks, or contact with friends or relatives during the questioning. *See Hines v. State*, 383 S.W.3d 615, 622 (Tex. App.—San Antonio 2012, pet. ref'd) (concluding the appellant was not in custody when police initially questioned him to investigate an accident and he was questioned in plain view of passing cars and the public); *Espinoza v. State*, 185 S.W.3d 1, 4-5 (Tex. App.—San Antonio 2005, no pet.) (concluding the trial court correctly found the appellant was not in custody when she freely went to the police station, was never restrained in her movements, and was free to leave at all times); *Hernandez v. State*, 107 S.W.3d 41, 48 (Tex. App.—San Antonio 2003, pet. ref'd) (concluding the appellant was not in custody for *Miranda* purposes when he was subjected to brief questioning in a public place and the officer did not immediately communicate to the appellant his intention to arrest).

## ANALYSIS

In its sole issue, the State argues the trial court abused its discretion by suppressing Ansari's statements because no reasonable person in Ansari's position would have felt restrained to the degree of a formal arrest. The State contends that at the time Ansari made the statements in question he was subject to a temporary investigatory detention. The State also points out that both an investigatory detention and an arrest involve a restraint on a person's freedom to leave. During an investigatory detention, officers are permitted to use reasonably necessary force to maintain the status quo, effectuate an investigation, or protect the safety of individuals at the scene. *Whittington*, 401 S.W.3d at 273 (citing *Balentine v. State*, 71 S.W.3d 763, 771 (Tex. Crim. App. 2002)). It may even be reasonable for an officer to handcuff suspects during an investigatory detention in order to maintain the status quo or to ensure officer safety. *Id*. (citing *State v. Sheppard*, 271 S.W.3d 281, 291 (Tex. Crim. App. 2008)). An arrest involves a greater degree of restraint on a person's freedom of movement than an investigative detention. *See id*.

Our inquiry here is whether Ansari, at the time he made his statements to Tavitas, was in custody for purposes of *Miranda* and article 38.22. It is undisputed that at the time Ansari made his statements to Tavitas, he was not under formal arrest. We therefore examine the objective circumstances surrounding Ansari's questioning to determine if a reasonable person would perceive the restraint on Ansari's freedom of movement to be comparable to a formal arrest. At the time Ansari made his statements, Tavitas had not used any force or made any showing of authority typically associated with an arrest. Ansari had not been placed in handcuffs or physically restrained in any way. Instead, Ansari was sitting at a table in his home when Tavitas arrived, and he remained there when Tavitas came over to talk to him about the complainant's allegations. Tavitas did not tell Ansari he was under arrest or accuse Ansari of hitting the complainant. Tavitas simply asked Ansari what had happened, and Ansari responded by stating that he and the

complainant had been arguing, she had spat on him, and he had hit her. Ansari estimated his conversation with Tavitas lasted only five minutes. Tavitas estimated the conversation lasted about fifteen to twenty minutes. By either witness's estimate, the conversation between Ansari and Tavitas was brief. We conclude that, given all of the objective circumstances, a reasonable person in Ansari's position would not have perceived the detention to be a restraint on his movement comparable to formal arrest. *See Ortiz*, 382 S.W.3d at 372.

Ansari defends the trial court's determination that he was in custody, relying on portions of Tavitas's testimony as well as his own testimony. Tavitas testified that, even before he went over to speak to Ansari, he believed probable cause existed to arrest Ansari and he would not have allowed Ansari to leave. Ansari testified that he felt like he was under "partial arrest" because Tavitas was watching him and he could not move freely in his own house.

In evaluating the objective circumstances surrounding the questioning, we do not consider the subjective beliefs of the officer unless the officer manifested his beliefs to the suspect. *Id.* at 372-73. Here, nothing indicates Tavitas manifested his subjective beliefs to Ansari. Similarly, under the circumstances presented here, Ansari's feeling that he was under "partial arrest" was a subjective matter irrelevant to our evaluation of the objective circumstances surrounding Ansari's questioning. *See Dowthitt*, 931 S.W.2d at 254 (noting that the subjective intent of the officer and the subjective belief of the defendant are irrelevant except to the extent that they may be manifested in the words or actions of law enforcement officers).

Ansari further argues the trial court properly concluded he was in custody because his situation is an example of the fourth general situation that may constitute custody as set forth in *Dowthitt*. Specifically, Ansari argues he was in custody because Tavitas had probable cause to arrest him and did not tell him he was free to leave. *See id.* at 255. We disagree. In order for this particular situation to arise, the officer's knowledge of probable cause must be manifested to the

- 7 -

suspect, and the manifestation of probable cause, combined with other objective circumstances, must be such that it would lead a reasonable person to believe that he was under restraint to the degree associated with an arrest. *Id.*; *Miller*, 196 S.W.3d at 265. Here, as previously discussed, Tavitas's belief that probable cause existed was not manifested to Ansari when he started questioning him, and the other objective circumstances surrounding the questioning failed to establish that Ansari was under restraint to the degree associated with an arrest.

The primary cases cited by Ansari are *Dowthitt* and *Xu v. State*, 100 S.W.3d 408 (Tex. App.—San Antonio 2002, pet. ref'd). We address each case briefly. In *Dowthitt*, the appellant was subjected to intermittent police questioning at the police station for a period of fifteen hours. 931 S.W.2d at 256. During this time, police exercised control over the appellant, accompanying him to the restroom and ignoring his requests to see his wife. *Id*. The Texas Court of Criminal Appeals concluded that the appellant's custody began about twelve hours into his questioning, after the appellant made a crucial admission stating that he had been present during the murders. *Id*. at 257.

In *Xu*, we held the appellant was in custody from the moment he made a "pivotal admission" that established probable cause for his arrest for his wife's murder. 100 S.W.3d at 415. In examining the objective circumstances surrounding the appellant's admission, we noted that at the time the appellant made his admission he had been at the police station for approximately five hours, was crying and emotionally distraught, and was given only one bottle of water and perhaps one restroom break. *Id*. at 414-15. In addition, one of appellant's friends tried to see or speak with the appellant, and was not permitted to do so. *Id*. at 414. Both *Dowthitt* and *Xu* involved protracted police questioning and a degree of control over the interviewees that simply is not present in the case before us.

As a matter of law, Ansari was not in custody when he made his statements to Tavitas. Therefore, the trial court abused its discretion in suppressing Ansari's statements. We sustain the State's issue.

## CONCLUSION

Having sustained the State's sole issue, we reverse the trial court's order granting the motion to suppress, and remand this case to the trial court for further proceedings.

Karen Angelini, Justice

Do not publish